(74 South. 527)
No. 21639.

NABORS et al. v. PRODUCERS' OIL CO.
(Feb. 12, 1917. Rehearing Denied March 12, 1917.)

*(Syllabus by the Court.)*

1. CONTRACTS ⬡182(1), 184—JOINT CONTRACT —JOINT AND SEVERABLE CONTRACT.
    A contract by which several persons obligate themselves to do the same thing creates a joint obligation on their part; and a contract whereby something is to be done for the common benefit of several persons creates an obligation that is joint and inseverable as to the obligees.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 780–786, 789.]

2. CONTRACTS ⬡184—JOINT AND SEVERABLE CONTRACTS—INJUNCTION.
    Whether a contract is joint or severable depends upon the intention of the contracting parties, as revealed by the language of their contract, and the subject-matter to which it refers.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 789.]

3. MINES AND MINERALS ⬡73, 78(1)—MINING LEASE—CONSTRUCTION—JOINT OBLIGATION.
    A mining lease whereby several lessors or grantors dispose of the mineral rights on several tracts of land, for a gross price, without stating the amount paid to each grantor and without stating or designating the area of land belonging to each grantor, creates a joint obligation on the part of the lessors or grantors, because it is impossible to affirm that the lessee would have paid a proportionate consideration for the lease or mineral rights on only a portion of the land. In such a contract, a stipulation that operations for the drilling of a well for oil or gas shall be commenced by the lessee within one year, cannot be construed to mean that operations for the drilling of a well shall be commenced on each tract of land belonging to the different lessors or grantors.
    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 201, 205, 210.]

4. MINES AND MINERALS ⬡78(1) — LEASE — CONSTRUCTION—DRILLING WELLS.
    In a lease of land for the production of oil and gas, in which the lessee expressly obligates himself to commence the drilling of a well within one year or forfeit the contract, there is no implied obligation on his part to drill as many wells as may be reasonably necessary to secure the oil or gas for the common advantage of the lessor and lessee within the year, when oil or gas has not been found in paying quantities.
    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 205.]

5. MINES AND MINERALS ⬡78(2) — LEASE — CANCELLATION—GROUNDS.
    When the lessee of a tract of land for the production of oil and gas has paid an adequate consideration in cash, and has complied with the only obligation expressly required of him during the first year after the signing of the contract, by the drilling of one test well, and has not found oil or gas in paying quantities, the grantor is not entitled to a cancellation of the lease on the ground that the lessee failed to perform an implied obligation to drill more

than one well for the common advantage of the lessor and lessee.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 206.]

6. MINES AND MINERALS ⬤⟳78(1, 2)—OIL AND GAS LEASE—INTEREST OF LESSEE—CANCELLATION.

A lease of land for the production of oil and gas, for which the lessee has paid an adequate consideration in cash, and in which he obligates himself to pay a stipulated royalty for all the oil or gas that may be produced, and containing the provision that, under penalty of forfeiture, the lessee shall commence the drilling of a well within one year from the signing of the contract or pay a stipulated consideration each year for an extension of the time, not exceeding a period of three years in all, and containing the provision that, if the lessee discovers oil or gas within the time limit or within the extension of the time limit provided in the contract, the conveyance shall be in full force and effect for 20 years from the discovery of oil or gas and as much longer as such minerals are produced in paying quantities, is a conveyance of a real right, and cannot be construed as the sale of a mere hope of producing oil or gas within one year from the signing of the contract. If the lessee, in such case, has complied with his obligation by commencing the drilling of a well within one year from the signing of the contract and is prosecuting the work with due diligence, the lessor is not entitled to a cancellation of the lease at the expiration of the year on the ground that he has discharged his obligation by permitting the lessee to attempt to realize his hope within the year.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 205, 206.]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Suit by W. A. Nabors and others against the Producers' Oil Company, for the annulment of an oil and gas lease. Judgment for plaintiffs, and defendant appeals, and plaintiffs, answering the appeal, ask that judgment be amended by allowing their demand for damages for the alleged violation of the contract on which demand the district court had rendered a nonsuit. Judgment annulled and ordered that plaintiffs' demand be rejected and their suit dismissed.

Hampden Story, of Shreveport, for appellant. Blanchard & Smith, of Shreveport, for appellees.

O'NIELL, J. The defendant appeals from a judgment annulling a contract purporting to be a mining lease of certain lands to the defendant. The plaintiffs, who were the grantors, have answered the appeal and pray that the judgment be amended by allowing their demand for damages for the alleged violation of the contract, on which demand for damages the district court rendered a judgment of nonsuit.

The following is a copy of the contract, viz.:

"This oil and mineral lease and contract, between J. M. Nabors (a married man, whose wife is Mary Lee), W. A. Nabors (a married man, whose wife is Robena Fuqua), J. B. Nabors, a single man, Mrs. Sallie Mag Nabors, widow of E. A. Nabors, individually and as tutrix for the minors, Sarah, Susan, Eugene, Louise, Margaret and Wilfred A., heirs of E. A. Nabors, deceased, all residents of De Soto parish, Louisiana, and Grand Bayou Planting Company, a corporation organized under the laws of Louisiana, with its domicile at Mansfield, La., herein represented by its president, J. M. Nabors, duly authorized by its board of directors (hereinafter styled grantor, whether one or more), and Producers' Oil Company, a corporation organized under the laws of Texas, and domiciled at Houston, Harris county, Texas (hereinafter styled grantee),

"Witnesseth: That said grantor does hereby grant, bargain, sell and convey unto the said grantee all of the oil, gas, coal and other minerals in and under the lands herein described, together with the exclusive right of ingress and egress at all times for the purpose of drilling, mining, and operating for oil, gas, coal and other minerals, and for conducting all operations and the erection of appliances and structures in regard thereto, and for laying all pipe lines necessary for the production, mining, storing and transportation of oil, gas and other minerals, with privilege of renewing and removing all such structures at will, reserving and securing to the grantor, however, the royalties, payments and other benefits and advantages hereinafter provided for.

"It is agreed that the grantee shall have free use of oil, gas, water and wood from said lands for all developments and operations thereon; said lands being described as follows:

"In De Soto and Red River parishes, state of Louisiana, and being Frac. S. E. ¼ of S. E. ¼; Frac. S. W. ¼ of S. E. ¼; Frac. N. E. ¼ of S. E. ¼; Frac. N. W. ¼ of S. E. ¼; Frac. S. ½ of N. E. ¼; Frac. E. ½ of N. W. ¼ and Frac. N. W. ¼ of N. W. ¼; Frac. N. W. ¼ of N. E. ¼ and Frac. S. W. ¼ of N. W. ¼ of Sec. 29, Frac. N. E. ¼ of N. E. ¼ of Sec. 30, containing 231.33 acres of land, more or less, and

being land patented from the state of Louisiana, and lying east of Bayou Pierre, all in T. 13 R. 11, Red River parish, Louisiana. Also Lots 1, 2, 3, and 4 in section 25, T. 13 R. 12 containing 416.5 acres of land more or less and being patented from the state of Louisiana, being in De Soto parish. Also west half of S. W. ¼ of S. E. ¼, Sec. 11 and S. W. ¼ of N. E. ¼, Sec. 15, and N. E. ¼ of N. W. ¼ of Sec. 26, and the S. E. ¼ of Sec. 26, being 260 acres of land all in T. 12 R. 12 De Soto parish, Louisiana. Making a grand total of 907.83 acres of land, more or less in De Soto and Red River parish, state of Louisiana.

"Grantor here warrants and defends the title to the above-described lands unto the said grantee and the successors and assigns of such, and obligate themselves to hold said grantee harmless from all damages by reason of any defect in title.

"To have and to hold all and singular the above-described premises, rights, properties and privileges, and all such as are hereinafter specified, unto the said grantee, and the heirs, successors and assigns of such, forever, upon the following terms:

"1. The considerations of this contract are as follows: (a) The sum of twenty-two thousand six hundred and ninety-four and 75/100 dollars, payment whereof by the grantor is hereby acknowledged; (b) such other payments by the grantee, if any, as may be hereinafter provided for; (c) the royalties hereinafter specified; and (d) the expenditure by the grantee of such sums of money as may have been or may hereafter be made upon the above premises or upon neighboring lands, for the development of mineral resources in such locality; and the payment and expenditures made or that may be made by grantor are considerations, not only for the minerals in the lands aforesaid, but for all the other privileges granted herein.

"2. The royalty above mentioned as to oil shall be a quantity equal to one-eighth (⅛) of all produced and saved upon the premises, the same to be delivered at the well, free of charge to the grantor, or to his credit, in the pipe line to which such wells may be connected.

"3. The royalty for coal shall be four cents for every ton of same that is mined and marketed, payable monthly.

"4. The royalty for gas shall be $300 per annum for each well from which gas is used off the premises, the grantor to have the privilege at his own risk and cost to make connections and use gas free of charge for one dwelling on the premises.

"5. The royalty for any other minerals discovered shall be one-tenth of the net proceeds arising therefrom while the same are being used off the premises.

"6. Under penalty of forfeiture of the rights and estate hereby granted, operations for the drilling of a well for oil or gas shall be begun within one year from the time of final execution and delivery of this contract, and if so forfeited the rights and liabilities of both parties shall thereupon be ended. Forfeiture may, however, be saved by the grantee, and the vitality hereof be continued and maintained, notwithstanding operations be not begun within the proper time limit, provided only that, for the privilege of delay in such beginning, from time to time, the grantee may pay, as hereinafter provided, $22,694.75 per year for a period not exceeding three years from delivery hereof.

"Operations upon a well begun shall be prosecuted with diligence, unavoidable accidents and contingencies only excepted, and, when a well is begun, it shall be sunk to a depth of ―――― feet, unless oil or gas be sooner developed in paying quantities, but a well which may be lost or spoiled may be continued at another location, and to be considered the same as the original.

"After a well is begun, no further payments in respect to delivery shall be due, and, for every well drilled, there shall in all events be secure from forfeiture an area of 200 feet square, with the well in the center, together with 40 acres of land adjoining, said acreage to be precisely designated by the grantee, if grantor so demands.

"7. Any payments due or to become due hereunder shall be deemed complete if made or tendered to the grantor or if deposited or tendered for deposit to the credit of the grantor in the People's Bank at Mansfield, La.

"8. In case the grantee or its successors or assigns should sink a well or shaft and discover either oil, gas or other minerals, within the limits of time, or the extension of such as hereinafter provided for, then this conveyance shall be in full force and effect for twenty years from the discovery of said product, and as much longer as such minerals are produced in paying quantities.

"9. No well shall be drilled nearer than ―――― feet of the house or barn on said premises, unless by consent of both parties. It is agreed that the grantor is to have the exclusive use of the premises hereinabove described for all purposes other than above mentioned. When requested, grantee agrees to bury all pipe lines below plow depth and pay all damages to crops and fences, when injured by grantee or by employés of such.

"10. This lease is not intended as a mere franchise, but is intended as a conveyance of the property and privilege above described for the purposes herein mentioned, and it is so understood by all parties hereto.

"11. It is agreed that this contract and all the terms hereof shall extend to and be binding upon the succession, legal representatives and assigns and successive assigns of such parties, respectively.

"Executed this 16th day of May, 1913."

The grantee selected the location for boring the first well on the 8th of May, 1914, and commenced drilling on the 16th of that month. The well was located on the land of

Mrs. Sallie Mag Nabors and W. A. Nabors, described in the lease as the S. E. ¼ of S. E. ¼ of section 25, township 13, range 12, and was known as Grand Bayou Planting Company well No. 1. It was completed on the 6th of August, 1914, at a depth of 2,910 feet. At 2,760 feet oil and gas were found in small quantities. At 2,800 feet the well blew out. At that depth the liner was set, and oil and gas were found in small quantities. It appears from the log that the well blew out again at a depth of 2,836 to 2,855 feet, and again at a depth of 2,888 to 2,900 feet, with oil showing, and again at 2,910 feet, spraying oil. At that depth, a small volume of gas was developed, with very high rock pressure, and the liner was blown in two, on or about the 8th of August, 1914. From that date, the lessee made continued efforts to get the broken liner out of the hole, to put a new one in, until the 23d of October, 1914, when it was found to be impossible to remove the broken liner, and the grantee abandoned work on the well.

On the 24th of December, 1914, that is, two months after having abandoned work on the first well, the grantee selected the location for a second well, known as Grand Bayou No. 2, on the tract of land belonging to Mrs. Sallie Mag Nabors, included in the lease.

This suit, for the annulment of the lease, was filed by the grantors in the Twelfth judicial district court, in the parish of De Soto, on the 17th of December, 1914; but citation did not issue until the 23d day of that month. It was served on the agent of the defendant company, in the parish of Caddo, at the domicile of the corporation, on the 24th of December, 1914. The defendant thereafter filed a plea to the jurisdiction of the district court in De Soto parish; and by consent of counsel, the case was transferred and the original pleadings filed in the First judicial district court, in the parish of Caddo.

The plaintiffs are the five grantors named in the contract of lease, and the Nabors Oil & Gas Company. The titles to the different portions of the land described in the contract of lease are set forth in the petition and admitted in the answer. It appears that W. A. Nabors owns individually a portion of the area of the land described in the lease and the undivided half interest in another portion of it; that he and J. M. Nabors own jointly another portion of the land; that Mrs. Sallie Mag Nabors owns an undivided half interest in another portion of the land, of which her minor children of whom she is tutrix own the other half interest; that J. B. Nabors individually owns a tract of 40 acres of the land described in the lease, and that the Grand Bayou Planting Company owns the balance of it. It is also alleged in the petition and admitted in the answer that the Nabors Oil & Gas Company owns the mineral rights in and under the S. E. ¼ of section 26, in township 12, range 12. There is no explanation in the pleadings, nor in the evidence, as to how the Nabors Oil & Gas Company acquired title to the mineral rights in or under that tract of land. Nor did the plaintiffs allege who owns the land. As it is described in the contract of lease in which all of the plaintiffs except the Nabors Oil & Gas Company were named as the grantors and warranted the title conveyed to the defendant company, it may be that whatever title the Nabors Oil & Gas Company has to the mineral rights in or under the S. E. ¼ of section 26, in township 12, range 12, was acquired from the defendant company.

For the sole purpose of showing the pretended title under which the defendants claim the minerals and mineral rights in the land described in their petition, the plaintiffs

annexed to their petition the contract of lease dated the 16th of May, 1913. They alleged that the defendant company did not begin the drilling of a well on any of the tracts of land described in the lease within the year ending on the 16th of May, 1914, and did not pay to the plaintiffs the sum of $22,-694.75 to prevent a forfeiture of the lease, according to its terms and stipulations; and that, in consequence of the failure to begin drilling a well within the year, or to pay the aforesaid sum of money to prevent a forfeiture of the lease, the defendants thereby forfeited all rights under the contract of lease and thus rendered it null and void and of no effect.

The plaintiffs alleged that, after the expiration of the year from the date of the contract, the defendant company made an effort to develop the tract of land owned by W. A. Nabors and Mrs. Sallie Mag Nabors, described in the contract of lease as the S. E. ¼ of section 25, township 13, range 12; but that the effort at development proved abortive, no production having been obtained, and that the well was abandoned. They alleged that they had not acquiesced in the drilling of the well, and that, as it was commenced after the expiration of the year from the date of the contract, the defendant was acting on its own responsibility.

They alleged that the defendant company had not made any attempt to develop any of the other tracts of land described in the contract of lease, belonging to the other grantors or lessors except that of W. A. Nabors and Mrs. Sallie Mag Nabors; and that the defendant company had not paid the sum of $25 per acre to any other of the grantors to prevent a forfeiture of the lease, as provided in the contract; hence they alleged that, as each of the grantors owned separate portions of the land described in the lease, the contract was forfeited as to all of the land except that of W. A. Nabors and Mrs.

140 La.—32

Sallie Mag Nabors, for the further and additional reason that the defendant company had made no attempt whatever to develop any of the land except that of W. A. Nabors and Mrs. Sallie Mag Nabors.

As to the tract of land belonging to W. A. Nabors and Mrs. Sallie Mag Nabors, on which the well was drilled, the plaintiffs alleged that, as the well was only a dry hole or nonproducing well, the defendant company could not, in any event, claim that more than 200 feet square, together with 40 acres adjoining it, was secure from forfeiture, under the terms and stipulations of the contract of lease.

The plaintiffs alleged that, as the lands described in the contract are of vast area, widely separated, the boring of a well on the land of one of the grantors was not a testing of the mineral value of the lands of the other grantors; and that, under a reasonable and correct interpretation of the contract of lease, the drilling of a well on one of the tracts, even if it had been drilled within the year from the date of the contract, could not have prevented a forfeiture of the lease on the lands belonging to the other grantors or lessors.

The plaintiffs alleged that the region in which the land described in the lease is situated, in the parishes of Red River and De Soto, was rich in oil and natural gas, as shown by development in that vicinity within the 18 months preceding the filing of this suit. They alleged that the contract of lease was forfeited and became null and void by the failure of the lessee to comply with its terms and conditions, and especially by the failure of the lessee to drill wells for oil or gas or to explore the lands for its minerals, which, they alleged, was the principal motive and object of the contract of lease.

Referring to and quoting the paragraph No. 8 of the lease, the plaintiffs alleged that

the parties to the contract contemplated that the grantee or lessee should drill a well on the land of each of the separate owners, within a year from the date of the contract, or pay each separate owner at the rate of $25 per acre to prevent a forfeiture of the lease of the land belonging to each separate owner. In the alternative, the plaintiffs alleged that, if the court should hold that the drilling of one well was the only obligation on the part of the grantee expressly provided to prevent a forfeiture of the lease, it was nevertheless contemplated by the parties, and was an implied obligation on the part of the lessee in all such contracts, that the lessee should drill more than one well on such a vast area of land, containing 907.83 acres, situated in two parishes, to properly explore and develop the land for oil and gas.

The plaintiffs alleged that, if the court should hold that the parties to the contract contemplated the drilling of only one well within the year from the date of the contract, the lessee or grantee only acquired the right to enter upon the land and bore for oil and gas and other minerals within the year from the date of the contract, together with the hope of finding oil and gas and other minerals; and that, under that construction, the grantors had discharged their obligation by permitting the lessee to attempt to realize its hope.

The plaintiffs alleged that, if the court should hold that the contract only required the drilling of one well within the year to prevent its forfeiture, then, inasmuch as the contract contained no provision as to what should be the consequence if the test well should prove a failure, there was an implied obligation on the part of the lessee to proceed further with the exploration and development of the land with reasonable diligence, and its failure so to do should be considered an abandonment of its rights, or, in

law, that such conduct amounted to an abandonment of the lease.

The plaintiffs alleged that the existence of oil and gas in paying quantities had been made known by the development of other lands in the immediate vicinity of the leased premises; that there was therefore an implied obligation on the part of the lessee to drill a sufficient number of wells on the leased premises to secure the oil and gas under it, for the mutual advantage and protection of the lessors and the lessee; and that the defendant had not complied with that implied obligation.

They alleged that the claim of the defendant to the mineral rights in the plaintiffs' lands was a cloud upon their title and prevented their leasing or operating the lands for their mineral products, and had thereby damaged the plaintiffs in the sum of $10,000, and would continue to damage them at the rate of $1,000 per month. They prayed for a judgment decreeing the lease null and for damages as alleged.

In its answer, the defendant company denied that it had violated the lease or permitted the same to be forfeited; and alleged, on the contrary, that it had begun drilling a well on the leased premises within the year following the date of the contract, and was therefore not required to pay to the plaintiffs or to any of them the sum of $22,694.75 to prevent a forfeiture of the lease, because of the express provision that, if the drilling of a well was commenced within the year, no further payments were required to prevent a forfeiture of the lease.

The defendant admitted, in its answer, that it had only commenced drilling the one well during the year after the date of the contract, and that it had not paid $25 per acre to prevent the forfeiture of the lease on any of the lands, and alleged that there was no obligation on its part to begin the drilling of more than one well within the

year, or to pay $25 an acre to prevent the forfeiture of the lease, when it had commenced the drilling of one well within the year following the date of the lease.

The defendant denied that the lands in the vicinity of the leased premises were rich in mineral oil or gas; denied that there had been any development of the mineral properties of the lands surrounding or in the vicinity of the leased premises; and alleged that the lands described in the contract of lease were in wild cat territory, remote from any developed mineral lands. The defendant denied that it had acquired only the hope of discovering oil or gas within the year from the date of the lease, and denied that the grantors had discharged their obligation by permitting the lessee to attempt to realize that hope within one year.

The defendant denied that it had violated any implied obligation, and averred that, on the contrary, it had diligently and reasonably prosecuted the development of the leased premises for oil and gas. The defendant alleged that, under the contract of lease, the lessors or grantors were bound in solido to warrant and defend and maintain the lessee in the possession of the lands for the purposes expressed in the contract.

It appears from the written reasons for judgment assigned by the district judge that he based his decree of nullity of the lease on two grounds: (1) That, as the first well drilled failed to produce oil or gas in paying quantities, the lessee had no right to drill another test well; and (2) if the plaintiff had the right to drill another test well, under the clause of the contract providing that "a well which may be lost or spoiled may be continued at another location and be considered the same as the original," the drilling of the second well was not commenced in good faith within a proper or reasonable time after the first well was lost or spoiled.

In passing upon the application for a new trial, the district judge admitted that the question of good or bad faith on the part of the defendant in commencing the drilling of the second well was not an issue under the pleadings or the evidence in the case, except in so far as it had application to the question of the defendant's having prosecuted the drilling of a well with due diligence. He then held that the defendant's right to continue its mining operations after the first well was lost or spoiled depended upon the construction of paragraph No. 8 of the contract, providing that, if oil or gas should be found within the limit of time or within the extension of such limit as provided in the contract, then that the contract should remain in force 20 years from the discovery of the oil or gas and as much longer as minerals should be produced in paying quantities. The district judge held that the finding of oil and gas, not in paying quantities, did not operate to keep the contract in force 20 years, or give the lessee the right to continue operations after the failure of the first well to produce oil or gas in paying quantities. The judge then rested his decree upon his conclusion that the lessee had the right to drill only one test well, holding that:

"If it had desired the right to make successive attempts to find oil, without paying an additional sum for that right, such should have been stated plainly in the contract and not left to construction."

The court based the decision upon the doctrine quoted from the case of Cooke v. Gulf Refining Co., 127 La. 593, 53 South. 874, viz.:

"If one has a lease on land to bore for oil, he cannot extend the lease beyond its terms on the ground that he has failed to find oil, for by his contract he acquired merely a hope, and the lessor has discharged his obligation by permitting the lessee to attempt to realize his hope."

## Opinion.

Our opinion is that the defendant's right to drill the second well, or to make successive

attempts to find oil or gas in paying quantities, did not depend upon the contract being continued in force for 20 years under paragraph No. 8 of the contract; but depended upon whether the contract was in force when the second well was begun, within the period of 3 years mentioned in paragraph No. 6 of the contract.

The contract is not susceptible of the construction that the grantee acquired nothing more than the hope of finding oil or gas in paying quantities within a year from its date. The rights and obligations of the parties to this contract, during the first 3 years after its date, are stated plainly and leave no room for construction. What the grantee acquired for the cash payment of $22,694.75 was the right to enter upon the lands and drill for oil and gas and other minerals, within one year from the date of the contract, with the following alternative consequences, viz.: If the grantee should fail to begin operations for the drilling of a well for oil or gas within one year, all of the grantee's rights were to be thereby forfeited, unless, however, the grantee paid, within the year, an additional sum of $22,694.75, for an extension of its right to commence operations for the drilling of a well within another year. In that event, that is, if the grantee failed to begin operations for the drilling of the well during the first year after the date of the contract, but paid $22,694.75 for the right to begin operations during the second year, then, if the grantee failed to begin operations for the drilling of a well during the second year, its rights under the contract were to be forfeited, unless, however, before the expiration of the second year the grantee paid an additional sum of $22,694.75 for the right to begin operations for the drilling of a well during the third year; and if the grantee then failed to begin operations for the drilling of a well during the third year from the date of the contract, all of its rights under the contract were to be at an end.

It is not necessary to determine whether the finding of oil and gas, not in paying quantities, within the two years from the date of the contract, would have kept it in force 20 years, under paragraph No. 8 of the contract. The only question to be determined is whether the defendant had complied with all the obligations required of it, to prevent a forfeiture of the contract, at the time this suit was filed, that is, in December, 1914, within 2 years from and after the signing of the contract.

The grounds on which the plaintiffs sued for a decree of forfeiture of the lease, as set forth in their petition, may be summarized as follows, viz.:

First. That the defendant did not begin operations for the drilling of a well within a year from and after the signing of the contract.

Second. That the contract was not joint, but severable, and that therefore, even if the drilling of the well on the land of E. A. Nabors and Mrs. Sallie Mag Nabors prevented a forfeiture of the lease as to their land, it did not prevent a forfeiture of the lease of the lands belonging to the other lessors.

Third. That it was contemplated by the parties to the contract, and was an implied obligation on the part of the lessee or grantee, that the latter should drill a sufficient number of wells on such a vast area of land to secure the oil and gas under it for the mutual advantage and protection of the lessors and the lessee; and that the drilling of one well was not a compliance with that implied obligation on the part of the lessee or grantee.

Fourth. That, if the court should hold that the lessee was only required to commence operations for the drilling of one well during the first year after the signing of the contract, then that the grantee acquired only

the hope of finding oil or gas or other minerals during the first year of the contract, and that the grantors discharged their obligation by permitting the lessee to attempt to realize its hope.

At the beginning of the trial of this case, the plaintiffs' counsel announced that they were mistaken in their allegation that the grantee had not commenced operations for the drilling of the well on the land of W. A. Nabors and Mrs. Sallie Mag Nabors within the year from the signing of the contract; and they abandoned that complaint as a cause for the annulment of the lease.

[1-3] The second complaint is that the beginning of operations for the drilling of a well on the land of W. A. Nabors and Mrs. Sallie Mag Nabors did not prevent a forfeiture of the lease of the lands of the other grantors. The force of that contention depends upon the contract being severable, not joint or entire. We agree with the finding of the district judge that the contract is not severable, but joint or entire. Article 2080, R. C. C., provides that, when several persons join in the same contract to do the same thing, it produces a joint obligation on the part of the obligors; and article 2081 provides that, when one or more persons make an obligation to several persons for the performance of something for the common benefit of all the obligees, it creates an obligation that is joint in favor of the obligees. Article 2084, R. C. C., declares that several obligations, although created by one act, have no other effect than the same obligations would have, if made by separate contracts, and that they are governed by the rules which apply to all contracts in general. But the Code does not lay down a rule for determining what contracts are joint and what are severable, except that, when several persons join in the same contract to do the same thing it produces a joint obligation on their part, and that,

when an obligation is incurred in favor of several persons for the performance of something for their common benefit, it creates a joint obligation in their favor. Whether a contract is severable or joint depends upon the intention of the contracting parties as revealed by the language of their contract and the subject-matter to which it refers. With regard to the subject-matter, the authorities agree that the contract is entire and not severable, although it embodies a conveyance or delivery of several things, if the consideration is paid in a gross sum and it is impossible to affirm that the party making the payment would have done so unless the rights he acquired should apply to all of the things mentioned. See 6 R. C. L. p. 859, § 246, and the decisions there cited. That test is particularly applicable to a mineral lease or option, where the lessee or grantee has paid a gross sum of money for the privilege he acquired on all of the lands described in the contract and it is impossible to affirm that he would have paid a proportionate consideration for the lease or option on only a portion of the land. It was admitted in this case that the cash consideration paid was at the rate of $25 per acre; but it was nevertheless a gross sum paid to all of the grantors. The contract did not state the amount paid to each of the grantors, nor state the area of land owned by each of them. They joined in one contract to do the same thing, in consideration for advantages to be derived for the common benefit of all of them. The language of the instrument leaves no doubt that their contract was joint and not severable. For example, the contract declares that the lessees are to be "hereinafter styled grantor, whether one or more."

In the case of Murray et al. v. Barnhart, 117 La. 1027, 42 South. 489, being a suit to annul a mining lease, this court held that, the obligation to complete one well being in-

divisible in its nature, the corresponding obligation to deliver the land was also indivisible; because, if the whole of one side of the contract was to be fulfilled, the whole of the other side should likewise be fulfilled. The court cited Pothier on Obligations, 215, and R. C. C. 2109. That article of the Code provides that an obligation is indivisible, even though the thing or the fact which is the object of it is in its nature divisible, if the light in which it is considered in the obligation does not admit of its being partially executed. But article 2111, R. C. C., declares that the question of divisibility of an obligation is applicable only to the heirs of the contracting parties.

In the case of Cochran v. Gulf Refining Co., 139 La. 1010, 72 South. 721, it was said to be well settled that a party to an indivisible contract, such as a mineral lease, who had, by disposing of a part of the property subject to the lease, rendered it impossible to dissolve the contract as to all of the property and restore matters to the same situation as though the contract had not been made, could not maintain an action against the other party to the contract to dissolve it. See the authorities there cited. See, also, South Penn. Oil Co. v. Snodgrass, 71 W. Va. 438, 76 S. E. 961, 43 L. R. A. (N. S.) 848; Brewster v. Lanyon Zinc Co., 140 Fed. 801, 72 C. C. A. 213; Harness v. Eastern Oil Co., 49 W. Va. 232, 138 S. E. 662; Thornton on Oil and Gas (2d Ed.) § 246, and authorities there cited.

Our conclusion is that the provision in the sixth paragraph of the contract, "operations for the drilling of a well for oil or gas shall be begun within one year," cannot be construed to mean that operations for the drilling of a well should be begun on the lands of each of the grantors. Hence our conclusion is that the beginning of operations for the drilling of a well on the tract of land belonging to W. A. Nabors and Mrs. Sallie Mag Nabors within the year from the date of the contract prevented a forfeiture of the lease on all of the lands described in the contract.

[4] In support of the third ground urged by the plaintiffs for demanding an annulment of the lease, that there was an implied obligation on the part of the lessee to drill more than one well within the time that had elapsed when this suit was filed, their counsel rely upon the decision of this court in the case of Caddo Oil & Mining Co. v. Producers' Oil Co., 134 La. 701, 64 South. 684, quoting from Thornton on Oil and Gas, § 111, that it is an implied condition of every lease of land for the production of oil that, when the existence of oil in paying quantities is made apparent, the lessee shall put down as many wells as may be reasonably necessary to secure the oil for the common advantage of both lessor and lessee. That doctrine can have no application to the case before us, because the existence of oil or gas in paying quantities in the land of the plaintiffs in this suit had not been discovered or made apparent when the suit was filed.

The plaintiff's counsel, in their brief, call attention to the fact that the superintendent of the oil fields of the defendant company, testifying on behalf of the defendant, admitted that the boring of one well on the vast area of land described in the contract before us was not a sufficient development of the land. What the witness said was that the boring of one well on that vast area of land would not be a sufficient test to determine whether any of the land contained oil or gas in paying quantities, and that the drilling of one well would not be a sufficient development of that vast area of land if it did produce oil in paying quantities. But it does not follow, from that admission, that the defendant company was obliged to drill more than one test well within the year after the signing of the contract.

[5] In the case of McClendon v. Busch-

Everett Co., 138 La. 722, 70 South. 781, and again in Cochran v. Gulf Refining Co., 139 La. 1010, 72 South. 718, it was held that, when the grantee of a mining lease for a limited term had paid an adequate consideration in cash and had complied with all of the obligations expressly imposed upon him, the grantor was not entitled to a cancellation of the lease for the failure of the grantee to drill more wells than he was expressly required to drill within the time stipulated.

The only obligation on the part of the lessee, with regard to the drilling of the well that was begun within the year after the signing of the contract, was that operations upon that well were to be prosecuted with diligence, unless unavoidable accidents or contingencies prevented it; and that, when that well was lost or spoiled, the plaintiff had the right to select another location for a well to be considered the same as the first. It is not denied, but is virtually admitted, that the breaking of the liner in the first well drilled by the defendant company was an unavoidable accident. Nor is it denied that the defendant endeavored faithfully to remove the broken liner in order to put in a new one. The fact that the plaintiff did not select another location on which to continue the drilling until two months after it was found to be impossible to remove the broken liner from the first well is not of itself sufficient evidence on which to hold that the defendant violated its obligation to prosecute its operations with diligence. In fact, the plaintiff's demand is not founded upon any contention that the defendant did not prosecute with diligence the drilling of the well that was commenced within the year after the signing of the contract, either at its original or subsequent location.

[6] The fourth ground urged in the plaintiff's petition for demanding that the contract be decreed null is the one for which the district court declared it null; that is, that the grantee acquired only the hope of discovering oil or gas or other minerals in paying quantities within a year from the date of the contract, and had no right to make successive attempts to find oil or gas or other minerals without paying an additional sum for that right. Our opinion is that the contract is not susceptible of that interpretation or construction. The fact that the lessee was only required to begin operations for the drilling of a well within one year from the signing of the contract precludes the idea that the lessee acquired only the hope of discovering oil or gas or other minerals in paying quantities within one year. We have no fault to find with the doctrine announced in the case of Cooke v. Gulf Refining Co., 127 La. 592, 53 South. 874, as a legal proposition that, if one has a lease on land to bore for oil, he cannot extend the lease beyond its terms on the ground that he has failed to find oil, for, by his contract, he acquired merely a hope, and the lessor has discharged his obligation by permitting the lessee to attempt to realize his hope. Nor have we any criticism to make of the other legal proposition announced in that case, that a lease which stipulates that it is to continue during the time that gas or oil is found in paying quantities is at an end when the time during which the lessee has a right to exploit the land has expired and no gas or oil has been found. But those principles have no application to the contract before us. The defendant in this case is not attempting to extend the lease beyond its terms on the ground that the lessee has failed to find oil or gas; nor had the time during which the lessee had the right to exploit the land for oil and gas and other minerals expired when this suit was filed. It is contended by the learned counsel for the plaintiff that the contract of lease involved in this case is identically like that to which the principles announced in Cooke v. Gulf Refining Co. were applied, and that they are

therefore applicable also to this case. The presumption is that the facts found in the case cited justified the application of the legal propositions stated, and we are not called upon now to review the facts of that case. It is sufficient to say that the legal principles announced in that case, whether applied rightfully or wrongfully to the contract there in contest, are not applicable to the contract before us in this case, although a copy of the contract referred to in Cooke's Case was introduced in evidence in this suit. In the case cited, the court found, as a matter of fact, that the contract provided for the drilling of three wells, one to be drilled in 30 days, another in 12 months, and a third in 24 months, from the signing of the contract; and that the grantee failed in its obligation to drill the first well within 30 days, and also in its obligation to drill the second well within 12 months. On those findings of fact—which we are not called upon to review—the decision was correct.

Our conclusion is that the contract of lease sought to be annulled by this suit was not violated or forfeited for any of the reasons or causes alleged in the plaintiff's petition.

The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the plaintiff's demands be rejected, and their suit dismissed, at their cost in both courts.