### NABORS et al. v. TEXAS CO.
### No. 779.

District Court, W. D. Louisiana,
Shreveport Division.

Oct. 24, 1938.

' Geo. A. Wilson, of New Orleans, La., and R. C. Gamble, of Mansfield, La., for complainants.

Chas. H. Blish, of Shreveport, La., for respondent.

DAWKINS, District Judge.

The plaintiffs are five in number and allege ownership and possession of certain lands in both De Soto and Red River Parishes, as heirs of Eugene A. Nabors and Sallie Mag Nabors, their deceased father and mother. The demand is a species of possessory action in respect to real property known to the Louisiana law as jactitation or slander of title. The present suit involves lots 2 and 3 of Sec. 25, Township 13 N., Range 12 W., situated in De Soto Parish, and the fractional S. E.¼ of S. E. ¼ of Sec. 29, East of Bayou Pierre, in Township 13 N., Range 11 W. in Red River Parish, the latter referred to in the petition as plaintiffs' "Red River lands." They have omitted from this suit lots 1 and 4 of Section 25, Township 13 N., Range 12 W., and ask that rights with respect thereto be reserved.

The petition alleges that the lands belonged to the community existing between their father and mother and were included in a lease by the mother individually and on behalf of petitioners, along with lands of other persons, executed on May 16, 1913. They seek to have the lease canceled and erased as a slander upon their title on the ground that it has terminated, and in the alternative, pray that it be canceled for insufficient development. Plaintiffs also

pray for damages in the sum of $93,675.20, because of alleged drainage.

The suit was filed in the State court and removed here because of diverse citizenship.

Defendant has filed exceptions of non-joinder, both of parties and causes of action.

Non-joinder is claimed because there were other parties to the lease at the time of its execution, interests have subsequently been acquired by still others, and all are necessary, and indispensable parties to an action for cancellation.

The plea of non-joinder of actions is based upon the contention that plaintiffs must include all lands covered by the lease in which they claim an interest, and cannot exclude lots 1 and 4.

### Non-Joinder of Parties.

The acreage claimed by plaintiffs, including that sought to be reserved for future consideration, amounts to 456.5 acres; while that belonging to others consists of 451.33 acres, making a total of 907.83 acres covered by the same lease. The lease is quoted as follows:

"This Oil and Mineral Lease and Contract.

"J. M. Nabors (et al.) (hereinafter styled grantor, etc.) and Producers Oil Co., a corporation, etc. (hereinafter styled Grantee)

"Witnesseth: That said grantor does hereby grant, bargain, sell and convey unto the said Grantee, all of the oil, gas, coal and other minerals in and under the lands herein described, together with the exclusive right of ingress and egress at all times for the purpose of drilling, mining and operating for oil or gas, coal and other minerals, and for conducting all operations, and the erection of appliances and structures in regard thereto, and for laying all pipe lines necessary for the production, mining, storing and transportation of oil, gas and other minerals (with privilege of renewing and removing all such structures at will), reserving and securing to the Grantor, however, the royalties, payments and other benefits and advantages hereinafter provided for. It is agreed that the grantee shall have free use of oil, gas, water and wood from said lands for all developments and operations thereon; said lands being described as follows:" (Land described).

"Grantor here warrants and defends the title to the above described lands unto the said Grantee, and the successors and assigns of such, and obligate themselves to hold said Grantee harmless from all damages by reason of any defect in title.

"To Have and to Hold, all and singular, the above described premises, rights, properties and privileges and all such as hereinafter specified, unto the said grantee, and the heirs, successors and assigns of such, forever, upon the following terms:

"1. The considerations of this contract are as follows:

"(a) The sum of Twenty-two Thousand, Six Hundred and Ninety-four and $^{75}/_{100}$ Dollars, payment whereof by the Grantee is hereby acknowledged. (b) Such other payments by the grantee, if any, as may be hereinafter provided for. (c) The royalties hereinafter specified and (d) the expenditure by the grantee of such sums of money as may have been or may hereafter be made upon the above premises, or upon neighboring lands, planned for the development of mineral resources in such locality, and the payments and expenditures made or that may be made by grantee, are considerations, not only for the mineral in the lands aforesaid, but for all the other privileges granted herein.

"2. The royalty above mentioned as to oil shall be a quantity equal to one-eighth ($\frac{1}{8}$) of all produced and saved upon the premises, the same to be delivered at the well, free of charge to the grantor, or to his credit, in the pipe line to which such wells may be connected."

"6. Under penalty of forfeiture of the rights and estates hereby granted, operations for drilling of a well for oil or gas shall be begun within one year from the time of final execution and delivery of this contract, and if so forfeited, the rights and liabilities of both parties shall thereupon be ended. Forfeiture may, however, be saved by the grantee, and the vitality hereof be continued and maintained, notwithstanding operations may be not begun within the proper time limit, provided only that for the privilege of delay in such beginning from time to time the grantee may pay, as hereinafter provided $22694.75 Dollars per year for a period of not exceeding three years from delivery hereof. Operations upon a well shall be prosecuted with diligence, unavoidable accidents and contingencies only excepted; and when a well is begun, it shall be sunk.

to a depth of .... feet unless oil or gas be sooner developed in paying quantities—but a well which may be lost or spoiled may be continued at another location, and to be considered the same as the original. After a well is begun, no further payments in respect to delay shall be due, and for every well drilled there shall in all events be secure from forfeiture an area of 200 feet square, with the well in the center, together with 40 acres of land adjoining, said acreage to be precisely designated by the grantee, if the grantor so demands.

"7. Any payments due or to become due hereunder shall be deemed complete if made or tendered to the grantor, or if deposited or tendered for deposit, to the credit of the grantor in the Peoples Bank of Mansfield, La.

"8. In case the grantee, or the successors or assigns of such, should sink a well or shaft and discover either oil, gas or other minerals within the limits of time, or the extension of such as herein provided for, then this conveyance shall be in full force and effect for twenty years from the discovery of said product, and as much longer as such minerals are produced in paying quantities."

"10. This lease is not intended as a mere franchise, but is intended as a conveyance of the property and privileges above described for the purposes herein mentioned, and it is so understood by all parties hereto.

"11. It is agreed that this contract and all the terms hereof shall extend to and be binding upon the successors, legal representatives and assigns, and successive assigns, of such parties, respectively."

This identical contract between the parties here, or their privies, was before the Supreme Court of the State in 1917, in the case of Nabors v. Producers' Oil Company, 140 La. 985, 74 So. 527, 532, L.R.A.1917D, 1115. There the plaintiffs (lessors) charged that the lease had been forfeited for failure to drill successfully, or pay rentals upon the lands belonging to certain of the lessors within the primary period; and further, that as to other lessors, no attempt whatever had been made to drill, which, with the failure to pay rentals, had released the tracts so owned from the terms of the lease. The State court, in summarizing the issues, in so far as pertinent here, said:

"Second. That the contract was not joint, but severable, and that therefore, even if the drilling of the well on the land of E. A. Nabors and Mrs. Sallie Mag Nabors prevented a forfeiture of the lease as to their land, it did not prevent a forfeiture of the lease of the lands belonging to the other lessors.

"Third. That it was contemplated by the parties to the contract, and was an implied obligation on the part of the lessee or grantee, that the latter should drill a sufficient number of wells on such a vast area of land to secure the oil and gas under it for the mutual advantage and protection of the lessors and the lessee; and that the drilling of one well was not a compliance with that implied obligation on the part of the lessee or grantee."

The rulings upon the points in question are concisely stated in the syllabi, which were by the court itself, and are quoted as follows:

"1. A contract by which several persons obligate themselves to do the same thing creates a joint obligation on their part; and a contract whereby something is to be done for the common benefit of several persons creates an obligation that is joint and inseverable as to the obligees.

"2. Whether a contract is joint or severable depends upon the intention of the contracting parties, as revealed by the language of their contract, and the subject-matter to which it refers.

"3. A mining lease whereby several lessors or grantors dispose of the mineral rights on several tracts of land, for a gross price, without stating the amount paid to each grantor and without stating or designating the area of land belonging to each grantor, creates a joint obligation on the part of the lessors or grantors, because it is impossible to affirm that the lessee would have paid a proportionate consideration for the lease or mineral rights on only a portion of the land. In such a contract, a stipulation that operations for the drilling of a well for oil or gas shall be commenced by the lessee within one year, cannot be construed to mean that operations for the drilling of a well shall be commenced on each tract of land belonging to the different lessors or grantors."

From the ruling so made, by which this court is bound, I think it is necessary to view this lease, at least in so far as the lessee is concerned, as if it had been with a single lessor. Considering it

in that light, there was an implied obligation of reasonable development of the entire property and to protect all of it from drainage. If the lands of one lessor were adequately developed, neither he nor anyone else could complain as to those lands because of the failure to properly develop and to protect the tracts of the other lessors, in which the owner of lands so properly developed had no interest, for the reason that as to him, the obligations of the lessee, although joint as to all of them, would have been discharged. On the other hand, if, viewing the whole acreage leased as if it had been by a single lessor, development were not reasonably adequate, it would seem that a fair and just interpretation would require that the other owners be permitted to seek relief, just as one lessee might do for the same causes. It is no answer to say that it must be presumed that the lessee would not have made the lease unless all had joined, for the insufficient development would be due to his own inaction, and he could scarcely complain if he should lose his rights upon the tracts of other owners through his own fault. I do not mean by this that it was necessary for the lessee to drill upon every tract which had a separate ownership, as the question of whether the others could complain of drainage by wells drilled upon lands of their co-lessors is one which is addressed more properly to the merits and to the issue of whether there would be a cause of action under those circumstances. What we are concerned with here is whether the other lessors are necessary and indispensable parties to the complaint of the plaintiffs, who separately owned the particular lands as to which their demands are made. If the others are satisfied or have had sufficient development and protection from drainage, it is no concern of plaintiffs; nor do I see that the former could have any interest in the success or failure of the plaintiffs' suit. If, as a result of this litigation, defendant is left with only a part of the property originally leased, then I repeat, it will be due to its own fault, and I do not believe that it has the right to insist that others be made parties who may or not have a right to complain dependent upon the conduct of defendant as it applies to them and their separately owned property. Defendant, or its assignor, was necessarily charged with knowledge of the separate ownership of the tracts in taking the lease. I cannot see that it is necessary to consider whether there has been adequate development as to the lessors, other than plaintiffs, except as to the extent it may affect that term when applied to the entire area, or that a determination as to the latter could affect adversely the rights of other persons, which are matters solely between them and the lessee.

It appears from the briefs that because of failure to record the lease in Red River Parish, there is only one other person, Mrs. Robena Nabors, interested with plaintiffs in lots 1 and 4, and counsel for defendant concedes that she alone needs to be considered as to this tract.

If the court should reach the alternative plea for reformation of the lease on the ground that it does not represent the true intentions of the parties, when construed as a joint obligation as between the lessors, then I am of the view that all of the original parties to the lease or their privies would have to be brought in. If the contract is to be reformed and made different from what it appears to be on its face, then everyone having an interest therein would be affected by such a decree and is entitled to be heard, before it is done. However, it may be that when we come to the merits it will be found that the plaintiffs and their co-lessors are precluded from further raising this issue by the decision in Nabors v. Producers' Oil Company, supra.

### Non-Joinder of Causes of Action.

As to the alleged non-joinder of causes of action, it is sufficient to say that a plaintiff may include in his demand all or only a part of what he thinks is due, and the question of whether he can thereafter sue upon what remains, is not one with which we are presently concerned. In the present case, it may or may not become necessary to decide whether the reservation prayed for shall be given or denied, but it in no way affects the power of the court to determine the rights of the parties as to the lands sued upon. The circumstances shown with respect to lots 1 and 4, in that plaintiffs own only a one-half interest in indivision with other co-lessors, I think is insufficient to warrant the application of the doctrine of a multiplicity of suits in this case.

The discussion about primary and secondary periods under the lease are pertinent to the merits, but I think it unnecessary to consider the same at this time. Both exceptions should be overruled.

Proper decree should be presented.