BYRNES, Chief Judge.
Intervenors/appellants [1], Air Space Group, Inc. and Charlie D. Waldrop, d/b/a Triad Telecommunications, Inc., appeal a judgment dismissing their intervention claiming 37% of certain funds sequestered by the plaintiff, Tel-Americom, L.L.C. (hereinafter “TAC”) from the defendant[2], Columbia Telecommunications, Inc. (hereinafter “Columbia”); and condemning Air Space, William Drinkard, Charlie D. Wal-drop individually and d/b/a Triad Telecommunications, Inc. to pay $44,560.00 in attorneys fees to TAC.
It is undisputed that this whole litigation arises out of a written “Memorandum of Agreement” (hereinafter referred to as the “Contract”) dated July 30, 1997 by and between TriAd Telecommunications, Inc., Air Space Group, Inc., Columbia Telecommunications, Inc., TEL Americaom Limited Liability Company, Thomas A. Nolan and C.-James Rogers.

ATTORNEY FEES

The trial court condemned interve-nors/appellants, Air Space to pay the plaintiff'appellee, TAC, $44,650.00 in attorneys fees. The trial court recognized the legal principle that a party may only recover attorneys fees provided by contract or statute. None of the parties dispute this proposition. Nor does Air Space contest the reasonableness of the fees awarded. Air Space challenges plaintiffs right to an award of any attorneys fees in any amount. It is undisputed that whatever entitlement the plaintiff may have to attorneys fees arises out of the Contract and not out of any statute. Further, it is undisputed that whatever contractual right plaintiff may have to the award of attorney fees arises *629 out of paragraph 7 of the Contract, and more particularly the following language:
TriAd, Air Space, and TAC ... will indemnify and save harmless each other from claims of any third parties relative to their respective interests.
TAC makes the following argument to this Court concerning this language:
In this case, the contract required that Intervenors defend and indemnify TAC for any claim asserted that TAC is not the rightful owner of its respective percentage of ownership in Paramount-Alabama. However, not only did Interve-nors fail to defend and indemnify the Plaintiff/Appellee, Intervenors joined the Defendants in challenging the ownership interests of TAC. TAC executed a contract with its attorney which calls for the payment of 25% of TAC’s recovery in this matter.
The essence of this argument by TAC, in effect, is that, although there is no reference in the Contract to attorneys fees, its right to attorneys fees is encompassed by a liberal and broad reading of the indemnity provision found in paragraph 7 of the Contract. As explained below, we need not reach this ingenious 13argument that apparently had great affect on the thinking of the trial court. Nor need we address plaintiffs suggestion that the obligation to indemnify includes the obligation to defend.
Instead, the resolution of this case turns on the language of paragraph 7 limiting the right to indemnify to “third parties.” TAC does not contest the fact that Air Space is a party signatory to the Contract. Plaintiff contends that the indemnity and hold harmless referred to in paragraph 7 applies to “any challenges to ownership.” Plaintiff also contends that: “Defendants would be considered a third party to that contractual clause.” This Court cannot agree.
“Third party” is a term of art. Black’s law Dictionary, Sixth Edition, defines “Third party”:
One not a party to an agreement, a transaction, or an action but who may have rights therein
This is consistent, for example, with Chapter 7 of Title IV of the Louisiana Civil Code (Art.1978, et seq.) entitled, “Third Party Beneficiary.”
LSA-C.C.P. art. 3506(32) defines “Third Persons” as:
With respect to a contract or judgment, third persons are all who are not parties to it....
It is also consistent with La. C.C. art. 3309, “Third persons defined”:
Third persons to a mortgage are those who are neither parties to the contract of mortgage or the judgment that the mortgage secures ...
We find that “third party” and “third persons” as are legally synonymous. The definition of “third party” or “third person” as one not a party to an agreement is so time honored and universal that the courts of this state do not even feel it necessary to define the term when employing it.
| therefore, although we are cognizant of the deference due the trial court’s findings even where documentary evidence, as in this case, is involved, Savarino v. Blue Cross and Blue Shield of Louisiana, Inc., 98-0635 (La.App. 1 Cir.4/1/99), 730 So.2d 1083; Williams v. Jackson Parish Hosp., 31,492 (La.App. 2 Cir.1/13/99), 729 So.2d 620, we conclude that the trial court committed clear error in reading the Contract in such a manner as to award attorneys fees to the plaintiff.
*630 AIR SPACE’S CLAIM AGAINST THE SEQUESTERED FUNDS
TAC sequestered $200,000.00 of Columbia’s funds due it under the Contract.
Paragraph 3 of the Contract provides that:
The monies paid to TriAd, Air Space, and TAC pursuant to the terms of Paragraph 4 of the Agreement shall be distributed according to the following percentages: TriAd- — 43%: Air Space— 37%;, and TAC — 20%. In these percentages as the revenues are received according to the terms of Paragraph 4. [Emphasis added.]
It is uncontested that the sequestered funds are subject to the just quoted provisions of Paragraph 3 of the contract, i.e., the $200,000.00 was claimed by TAC pursuant to its 20% interest referred to in that paragraph. Air Space received nothing for the 37% due it from Columbia. Air Space contends that the phrase “as the revenues are received” entitles it to 37 cents of every dollar coming from Columbia, including the funds sequestered by TAC. Air Space argues that the phrase “as the revenues are received” makes it a joint obligee. This argument is based on the second paragraph of La. C.C. art. 1788:
When one obligor owes just one performance intended for the common benefit of different obligees, neither of | Bwhom is entitled to the whole performance, the obligation is joint for the obligees.
Air Space argues in its brief that La. C.C. art. 1788 controls because the language in the Contract stating that Columbia is to make payments “as the revenues are received according to the terms of Paragraph 4,” should be read as requiring that:
Each payment of “revenues” by Defendants pursuant to the contract represented one performance by the obligor that was intended for the common benefit of the three obligees, each of which was to receive its applicable percentage of the payment and only its applicable percentage of the payment. [Emphasis original.]
La. C.C. art. 1788 must be read along with the immediately preceding Civil Code articles. La. C.C. art. 1786 provides that:
When an obligation ... binds one obli-gor to more than one obligee ... the obligation may be several, joint, or soli-dary.
In the instant case the obligor, Columbia, was bound by Paragraph 3 to three obligors: TriAd — 43%; Air Space — 37%; and TAC — 20%.
La. C.C. art. 1787 provides that:
[[Image here]]
When one obligor owes a separate performance to each of different obligees, the obligation is several for the obligees.
A several obligation produces the same effects as a separate obligation owed to each obligee by an obligor or by each obligor to an obligee.
TAC contends that it’s 20% due from Columbia that is the source of the sequestered funds is a several or separate obligation under La. C.C. art. 1787.
Moreover, the comments to La. C.C. art. 1788 rely heavily on Nabors v. Producers’ Oil Co., 140 La. 985, 74 So. 527 (1917). Nabors was a suit over a [fimineral lease involving multiple lessors. The lessors were referred to collectively as “grantor” and all payments were to be made to the lessors collectively rather than individually:
‘7. Any payments due or to become due hereunder shall be deemed complete if made or tendered to the grantor or if deposited or tendered for deposit to the *631 credit of the grantor in the People’s Bank at Mansfield, La.
The Nabors court found a joint obligation existed. In contrast in the instant case, the Contract describes a proportional breakdown of the amount due each obli-gee: TriAd — 43%; Air Space — 37%; and TAC — 20%. Moreover, as the performance required is the payment of money rather than the delivery of single corporeal thing, separate performance as to the obli-gees is feasible. La. C.C. art. 1787.
We find, consistent with the implied findings of the trial court, that the phrase “as the revenues are received” refers to the timing of the payments contemplated by the parties. It does not refer to the manner of payment or the nature of the rights of the payees or the expectation of the parties as to the nature of the remedies intended to be conferred by the Contract. Carrying Air Space’s reasoning to its logical conclusion would mean that it was the intention of the parties that Columbia would be expected to issue one check payable to the parties collectively (jointly) similar to the single payment paid by the lessee to the collective lessors in Nabors, in spite of the language in Paragraph 3 calling for distribution according to the percentage due each party. Not even Air Space contends that this was the intention of the parties.
Following Nabors, the Supreme Court in Shell Petroleum Corp. v. Calcasieu Real Estate & Oil Co., 170 So. 785, 185 La. 751 (1936) stated:
17Inasmuch as the question, whether the rights and obligations of the parties to a contract in any given case are joint or severable, depends entirely upon what was the intention of the parties to the contract, and, inasmuch as the question, as to what was the intention of the parties in any given case, is only a question of fact, the decisions on the subject are of little or no value as precedents. The decision in each case turns not upon a presumption of law but upon the terms of the contract. The only rules that are applicable in such cases are the rules for the interpretation of contracts.
This reinforces the statement made earlier in this decision that we should defer to the trial court’s interpretation of the meaning of the language of the Contract, except where it is manifestly erroneous or clearly wrong.
In Shell Petroleum the court found that the obligation of the lessee to the lessor was joint. In reaching that conclusion the court relied heavily on the fact that payments were to be made to the lessors collectively. As this fact distinguishes Shell Petroleum and Nabors from the instant case, we find that the trial court had a reasonable factual basis upon which to base its decision. We must give great weight to the trial court’s findings where the evidence furnishes a reasonable factual basis for these findings. Savarino v. Blue Cross and Blue Shield, at p. 9-10, 730 So.2d at 1089. Accordingly, we find that the obligation due by Columbia to Air Space was not joint with that due to TAC and that Air Space does not have a right to the funds sequestered by TAC.
Air Space has a separate right to assert its claim for its percentage. It may not assert that right to the funds already sequestered by TAC. One might say that as to the sequestered funds, TAC won the race to the courthouse.
For the foregoing reasons, the judgment of the trial court is affirmed as to that part dismissing Air Space’s intervention claim against the sequestered funds, |sand reversed as to that portion condemning Air space to pay attorney’s fees, and remanded for further proceedings consistent with this opinion.

*632
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

. Also named as defendants in TAC’s petition were Columbia’s owners, Robert A. Hart, IV, Thomas A. Nolan, C. James Rogers and Philip J. Chasmar.