Statement of the Case.
MONROE, C. J.
The case as here presented by the pleadings and evidence is as follows:
Plaintiff alleges: That J. M. Nabors owned the mineral rights in, under, and pertaining to 7,215 acres of land lying in De Soto and Bed River parishes, and that on January 27, 1911, he executed a so-called “pretended” lease to Snyder and McCormick authorizing them to explore the land for oil, gas, and other minerals, with all rights necessary and incidental thereto. That, by various subleases, Snyder and McCormick assigned said lease, or rights thereunder, in so far as it affected certain specified tracts constituting parts of said acreage, to different individuals and corporations, as follows, to wit: Charles E. Kirschler, 80 acres; M. B. Lare, 40 acres; B. C. Armstrong, 20 acres (subsequently transferred to Gulf Befining Company); Pure Oil Company, 80 acres; Standard Oil Company, 40 acres; Producers’ Oil Company, 445 acres. That on August 14, 1911, said J. M. Nabors conveyed the mineral rights so acquired by him to the Nabors Oil & Gas Company, plaintiff herein. That all of said assignments were null and void ab initio, and should be so declared, for the reason that the so-called “lease”'to Snyder and McCormick was made without consideration or mutuality of obligation, and contained a potestative condition with respect to any obligation that might otherwise have been imposed on the grantees. That, should the court hold differently, plaintiff alleges, in the alternative, that the sole object of the lease to Snyder and McCormick was to obtain the prompt and adequate development of the oil, gas, and other minerals to be found beneath said 7,215 acres of land, and that neither the original lessees nor any of their assignees have brought about or attempted to bring about such development (and then follow certain allegations as to what has been done in that behalf). That said 7,215 acres are situated in five townships, and, in some instances, consist of widely separated tracts of different areas, and that the development of one tract, or portion thereof, by one assignee, cannot be considered as the development of other tracts, constituting said aggregate; and that, if there was any obligation imposed on Snyder and McCormick to develop the 7,215 acres (which is denied), then each subsequent assignee was expressly and impliedly bound to develop the tract assigned to him, independently and without reference to such other tracts. That on June 12, 1911, Snyder and McCormick pretended to assign to the Christine Oil Company “interests in said so-called lease * * * as to a large portion of said lands” (said to be about 3,000 acres) “* * * described in a copy of said * * * assignment hereto annexed * * * marked ‘Exhibit V’; and on June 28, 1913, the *91 said Christine Oil Company assigned the same to the * * * Producers’ Oil Company, a copy of said * * * assignment * * * being annexed * * * marked ‘Exhibit W.’ ” On June 3, 1913, McCormick assigned to the Gulf Refining Company an interest in said lease with respect to 440 acres, described in “Exhibit X”; and, on the same day, assigned to said company an interest-with respect to 207 acres described in “Exhibit Y.”
“That plaintiff * * * does not, in this suit, * * * assail or seek the nullity of said so-called lease from J. M. Nabors to said Snyder and McCormick * * * to the extent of and in so far as the same is applicable to and affects and operates upon the portions of said lands described in said so-called lease assigned and transferred * * * to said Christine Oil Company * * * as shown by * * * Exhibits Y and W; nor to the extent of, and in so far as the same is applicable to, and affects and operates upon, the portions of said lands described in * » * Exhibit X * * * and Exhibit Y; but specially reserves its rights with respect to the portions of land described in said exhibits.”
And petitioner, accordingly, prays that the lease from Nabors to Snyder and McCormick, and the various assignments thereunder, be decreed null and void, save as it relates to the assignments evidenced by the Exhibits V, W, X, and Y, with respect to which it prays that its rights to sue for such nullity be reserved.
To the petition so filed, J. W. Nabors added what is called an “amended and supplemental petition,” in which he joins in the allegations and prayer of the original plaintiff.
Defendants interposed various exceptions, including that of no cause of action, which, having been overruled, they answered, and there was a trial on the merits, in which the following facts were disclosed, to wit: On January 22, 1911, J. M. Nabors acquired by purchase all of the oil and gas and other minerals in and under a number of tracts of land (said to be, in part, noncontiguous), aggregating 7,215 acres, and lying in, what was then, wholly unproved territory in the parishes of De Soto and Red River, and, five days later (January 27th), he executed an instrument in writing embodying the lease to Snyder and McCormick which is here attacked, thereby granting to them, for a consideration of one dollar, recited to have been paid, the exclusive right, at any time within six months, “to begin operations of drilling a well for oil or gas on said premises, and also the right to extensions of time in which to begin such operations, for successive periods of six months,” on payment of one dollar for each of such extensions; it being stipulated that, in the event of a default in any such payments) on or before the first day of each six months’ period, or of the failure of the lessees to begin such operations within three years, the lease should “wholly determine” provided, however, that should they so begin, either within the first or any extended period, and continue with reasonable diligence, they should not be required to make further payments and should have the right to make as many attempts to find oil and gas, and to continue the exercise of such right so long as they might think proper, “even beyond said term of three years,” subject to the condition that not more than six months should be allowed to elapse between the abandonment of one attempt and the beginning of another; and further stipulated, that, if oil or gas should be found in paying quantities, the lessees should “become, at once, vested with an estate in and to all of the oil or gas underlying said land, with the right to produce the same, and all of the same”; that the lessor should be paid a royalty of one-eighth from the oil saved and a rental of $200 from each producing gas well; that the lessees should have the right to remove, at any time, any and all property placed by them on the said *93 premises, -with the modification that, should they conclude, after finding oil and gas in paying quantities, “that they do not desire to operate longer under this lease, then the right is conferred to surrender the same, upon payment of $200 to the lessor, and such right of surrender shall also confer the privilege of removing from said premises any and all material placed thereon” by said lessees, their successors and assigns; and that “all the conditions and terms herein shall extend to the heirs, executors, legal representatives, successors, and assigns of the parties hereto.”
As will he seen from the foregoing, the instrument in question purports to grant to the lessees the right “to begin operations of drilling a well for oil or gas” on the 7,215 acres described therein, and various other rights incidental thereto. It, however, imposes on them no obligation to begin such operations or to take any other step towards the execution of the supposed contract, but, to the contrary, leaves such execution, prior to the discovery of oil or gas in paying quantities, entirely dependent upon their volition, and, after such discovery, subject only to the condition that, in the event they then conclude that they dOi not desire to operate longer under the lease, they may withdraw on. paying the lessor $200, and may, in such ‘case, remove from the premises any and all ‘material placed thereon by them. The “operations of drilling a well” were, however, begun within two months after the signing ■of the instrument, and within less than three months thereafter (on April 18, 1911) the lessees “brought in” a well that produced gas in paying quantities, being the first paying well producing either oil or gas that was drilled in that territory, and plaintiff was thereafter paid rental for the same at the rate of $200 a year. The lessees then made the various subleases mentioned in the petition, including one covering (as we understand) 3,000 acres of the land in question to the Christine Oil & Gas Company, which corporation they appear to have organized, and that company, after expending over $100,000 in exploiting the same, subleased the land to the Producers’ Oil Company, by which 9 wells were drilled, at an expense of $122,-833.95. They also made the subleases mentioned in the petition to the Gulf Refining Company, by which a number of wells were drilled and $111,812.28 expended; and made a sublease to the Mansfield Gas Company, which brought in one or more paying gas wells, the rental of which was, and (as we understand) is, paid to the plaintiff. The total number of wells drilled upon the 7,215 acres by the lessees and their assigns exceeded 20, and the total amount expended by them exceeded $330,000; and, as about 75 per cent, of the wells produced nothing (that being about the percentage of dry wells throughout the territory), the expenditures largely exceeded the receipts, and the plaintiff company, to which was paid over $14,-000 in royalties from oil, besides the rentals from the gas wells, had, alone, come out, at the time that this suit was instituted, with a profit from a business that paid no profit, and, up to November, 1915, when the judgment of the district court was rendered, had continued to receive such profit. Considerable testimony was taken upon the question of the sufficiency of the development of the land in question, and, considering the character of the territory, the results accomplished, and the expenditures as compared with these results, it fails to satisfy us that the development of the 7,215 acres of land in question, as a whole, has not been reasonably adequate. The district court gave judgment for plaintiff practically as prayed for, and defendants have appealed.
Opinion.
Considering this action in the light of the prayer of the petition, and notwithstanding *95 the allegations of nullity ab initio, it is necessarily based upon the theory of a subsisting contract, which plaintiff seeks to annul with respect to certain rights and obligations, therein expressed or implied, and to particular acres of land, among the 7,215 acres, to which it relates, and to leave undisturbed with respect to other rights and obligations, and to the (say) 3,647, of said aggregate number, of acres, which remain, but with a reservation of the right hereafter to bring suit to annul it with respect to them also. The contract (assuming, as plaintiff does, that it is a contract) is, however, one and indivisible, and concerns, not the rights, obligations, and particular acres selected by plaintiff, and with respect to which, considered separately, it is sought, on the one hand, to be annulled, and, on the other, to be left undisturbed, but all the rights and obligations therein expressed or implied, and all of the land to which it relates, considered as a whole; which rights and obligations are so interdependent and related to the entire body of the land that they can neither be divorced from each other nor from the land without creating a new contract. If plaintiff was advised that the contract, as made, was void ab initio, or was not being executed by the lessees or sub-lessees in accordance with its terms, it was its privilege to bring suit to annul it; but it has no standing, while holding on to the benefits received and being received, and whilst unable or unwilling to restore the status quo ante, to demand that it be annulled in those respects wherein it disapproves, or derives no profit from, its execution, and maintained or left undisturbed in those respects wherein it has found and is still finding a profit. Cochran v. Gulf Refining Co., 139 La. 1019, 72 South. 718; Nabors v. Producers Oil Co., 140 La. 985, 74 South. 527, L. R. A. 1917D, 1115; Barrow & Le Blanc v. Penick & Ford, 110 La. 573, 34 South. 691.
The exceptions of no cause of action should therefore have been sustained; dnd it is now adjudged and decreed that the judgment appealed from be annulled, and that there be judgment in favor of the defendants, maintaining said exceptions and dismissing this suit at the cost of the plaintiffs.