730 So.2d 1083 (1999)
Darlene D. SAVARINO
v.
BLUE CROSS AND BLUE SHIELD OF LOUISIANA INC. As Louisiana Health Service and Indemnity Co.
No. 98 CA 0635.
Court of Appeal of Louisiana, First Circuit.
April 1, 1999.
*1084 Rodney C. Cashe, Ashley A. Edwards, Hammond, Counsel for defendant/appellant, Blue Cross/Blue Shield of Louisiana.
Gino J. Rendeiro, New Orleans, Counsel for plaintiff/appellee, Darlene Savarino.
Before: CARTER, C.J., SHORTESS and WHIPPLE, JJ.
WHIPPLE, J.
The plaintiff, Darlene D. Savarino, filed suit against her health insurer, defendant, Blue Cross and Blue Shield of Louisiana ("Blue Cross") for payment of a claim for *1085 expenses incurred for surgery on September 21, 1994. The trial court granted judgment in favor of plaintiff for medical benefits and penalties and attorney fees pursuant to LSA-R.S. 22:657. From that judgment, defendant appeals, contending that the trial court erred in awarding benefits to plaintiff under the terms of the health insurance contract and in awarding penalties and attorney fees under LSA-R.S. 22:657. For the following reasons, we affirm the trial court judgment.

FACTS AND PROCEDURAL HISTORY
Blue Cross issued to plaintiff and her husband a health insurance policy with an effective date of October 15, 1993. Under the terms of the policy, no coverage is provided for "[a]ny charges incurred for Pre-Existing Conditions if incurred within 365 days following the Member's Original Effective Date." The policy states that a "condition is considered pre-existing if symptoms exhibit themselves; or any medical advice, diagnosis, care or treatment is received for that condition within 365 days immediately preceding the member's original effective date." Additionally, the policy excludes coverage for treatment of conditions relating to reproductive organs during the first year the policy is in effect.
In November 1993, plaintiff underwent laparoscopic surgery to remove abdominal adhesions caused by her prior surgeries for caesarian section and hysterectomy. Plaintiffs treating physician, Dr. Tristan R. Schultis, testified that "every adhesion that [he] could fine [sic] was removed or released" in the November 1993 surgery.[1] Blue Cross denied coverage of this surgery based upon the pre-existing condition exclusion since surgery had been recommended in a September 24, 1993 office visit, approximately one moth prior to the effective date of the policy. Thus, the November 1993 surgery fell under the pre-existing condition exclusion. The November 1993 surgery was successful, and accordingly, the pain caused by these adhesions was alleviated, according to plaintiff and her treating physician.
However, in March 1994, plaintiff began to suffer from bladder pain and spasms. In an August 12, 1994 office visit with Dr. Schultis, plaintiff again reported complaints of lower abdominal pain. Dr. Schultis testified that this August 1994 complaint suggested possible recurrence of adhesions. On August 13, 1994, one day after her appointment with Dr. Schultis, plaintiff was involved in a motor vehicle accident whereby she sustained blunt trauma to her abdomen when an eighteen-wheeler rear-ended her vehicle. Due to the force of the rear impact, Mrs. Savarino's stomach hit the steering wheel and broke the steering column. Her lower abdominal pain increased thereafter. Both Mrs. Savarino's treating physician, Dr. Schultis, and Blue Cross' medical director, Dr. James G. Gengelbach, opined that the blunt abdominal trauma Mrs. Savarino suffered, while possibly increasing the painfulness of abdominal adhesions, would not cause the adhesions found during the surgery in September 1994.
However, after the accident, Mrs. Savarino's severe pelvic pain in her lower abdomen continued. Finally, on September 21, 1994, Dr. Schultis performed a diagnostic laparoscopy which revealed the presence of extensive adhesions. The adhesions were so extensive that Dr. Schultis felt it necessary to perform a laparotomy to remove all of them. Importantly, Dr. Schultis noted that the adhesions he found in the September 1994 examination were new adhesions and were not the same adhesions he had removed and released in the prior surgery in November 1993. He specifically noted that the areas which had been previously treated in the 1993 surgery were "remarkably adhesion free from her previous successful surgery of November of [19]93."
Dr. Schultis' office applied for and was granted by Blue Cross a pre-authorization letter for the 1994 surgery. The letter indicated that Blue Cross viewed the surgery as *1086 medically appropriate and allowable subject to Mrs. Savarino's contract benefits. Additionally, the pre-authorization letter contained a hand-written reference to indicate a one year reproductive organ exclusion under the policy. The pre-authorization letter also stated that "[t]his information is not a guarantee of payment. After services are rendered, the claim and supporting documentation... will be reviewed and [a] final determination will be made."
After the surgery was performed and the claim was submitted, the Blue Cross computer rejected plaintiffs claim for the September 21, 1994 surgery expenses on the basis that these expenses were excluded from coverage under the policy's one-year pre-existing condition exclusion. In response to the computer system's denial of the claim, Dr. Schultis sent a letter to Blue Cross dated October 31, 1994, explaining the surgery and offering to furnish further information upon request. However, Blue Cross continued to deny coverage for the surgery based upon the one-year pre-existing condition exclusion without further review of Mrs. Savarino's claim.
Mrs. Savarino did not appeal Blue Cross' denial of coverage, but instead filed suit against Blue Cross on April 3, 1995. It was not until after Mrs. Savarino filed suit that her claim for the September 1994 surgery was submitted for internal review by a Blue Cross nurse or the Level III medical review physician, Dr. Gengelbach. Dr. Gengelbach is the medical doctor employed by Blue Cross to review claims internally for the company. Further, any decision to deny or approve claims for medical reasons is made by him. Dr. Gengelbach was not requested by the legal department to review Mrs. Savarino's claim until May 5, 1995. Dr. Gengelbach replied to the Blue Cross legal department's request for review on May 8, 1995, stating, "[t]he surgery [of September 21, 1994 was] rejected by [the] system and was not reviewed. Would be happy to review. Obtain medical records from [November 1, 1993] [through] [September 21, 1994] surgery." Upon reviewing Mrs. Savarino's medical records, on June 12, 1995, Dr. Gengelbach concluded the September 21, 1994 surgery should be denied coverage. He stated in his reply to the Blue Cross legal department's request for review:
The [September 21, 1994] case should also be denied as [pre-existing]. It is for the same condition and probably as a result of the surgery on [November 16, 1993,] which was clearly [pre-existing]. The argument will be made by plaintiff that these are new adhesions and everything was fine after [November 16, 1993] surgery[,] but, adhesions form for 2 reasons[,] prior surgeries or intra-abdominal infection.
Dr. Gengelbach testified that he relied on two pieces of information to deny the September 21, 1994 claim: (1) Blue Cross' denial of a previous claim in November 1993, for a similar surgery as being excluded by the preexisting clause which also excludes treatment of reproductive organs during the first year of the contract, and (2) that upon reviewing the records, it appeared to be surgery of the reproductive organs, again for the same reason that the prior surgery was performed.
The parties submitted the case for a bench trial presenting briefs and exhibits. The trial court rendered judgment dated October 7, 1997, in favor of plaintiff and against defendant. The trial court found that the adhesions which were removed in the 1994 surgery were not a pre-existing condition under the policy and that, therefore, the Blue Cross policy covered the expenses of the September 1994 procedure. The trial court reasoned:
The defendant contends that on August 12, 1994, plaintiff sought treatment or advice for adhesions caused by the November 1993 surgery, and therefore this is a continuing pre-existing condition. Plaintiff contends that on that day she complained only of bladder pain and spasm which was distinctly different from pain caused by adhesions. Dr. Schultis' records are vague regarding plaintiffs complaints on that day and his notes show only that she complained of lower abdominal pain. Defendant's argument that the August 12, 1994 visit reflects treatment for a pre-existing condition is inconsistent with the terms of the contract. A pre-existing condition is defined by the contract as a condition for *1087 which symptoms exhibit or for which the insured sought treatment or advice within the 365 days prior to the effective date of the contract. Though an insured may have a condition for several years prior to the contract, if she did not exhibit symptoms or seek treatment or advice for the condition in the 365 days prior to the effective date then she is not subject to the one year waiting period for the treatment of the condition.
Clearly Mrs. Savarino sought treatment for adhesions in 1993, prior to the effective date of the contract. She had surgery in November 1993 to remove these adhesions. All adhesions were removed or released. There is no evidence in the record to show that the adhesions which were removed in the September 21, 1994 surgery existed prior to the effective date of the contract, October 15, 1993. If they had existed prior to the effective date of the contract, then Dr. Schultis would have removed them during the November 1993 surgery. Whether these adhesions were caused by Mrs. Savarino's earlier surgeries for caesarian section and hysterectomy or the November 1993 surgery is irrelevant. Since all adhesions were removed or released in November 1993, soon after the effective date of the contract, the evidence supports that the adhesions found in September 1994 were new adhesions which had not yet developed prior to the effective date of the policy.
The plaintiffs need for two surgeries to remove adhesions clearly shows that plaintiff is prone to developing adhesions. However, the mere propensity to develop adhesions is itself not a physical condition which can be treated and therefore, it can not be considered a pre-existing condition. It is the manifestation of adhesions which becomes the condition that requires treatment.
Furthermore, the trial court found that Blue Cross had improperly denied Mrs. Savarino's claim without making an investigation into the need for the surgery and, therefore, did not have a reasonable ground to deny the claim, noting as follows:
Plaintiff also seeks penalties and attorney's fees for defendant's unreasonable denial of coverage. La. R.S. 22:657(A) allows attorney's fees and double recovery as a penalty when a health insurer refuses to pay a claim, within thirty days of written proof, without just and reasonable grounds.
The defendant first pre-approved this surgery but warned that it would not be covered if it related to reproductive organs. A simple review of plaintiffs records at that time would have shown defendant that plaintiff did not have reproductive organs. When the bills came in to defendant, the system rejected the claim without review. At this time defendant made no investigation into the need for the surgery and did not have a reasonable ground to deny the claim. This denial of coverage was not reviewed until eight months after the surgery and was only reviewed because plaintiff filed suit. This delay in having Dr. Gengelbach review the rejection is clearly unreasonable. When the claim was initially refused, Dr. Schultis wrote defendant on October 31, 1994 and explained why this surgery was necessary. This letter should have caused the defendant to investigate the claim to see if it was truly based on a pre-existing condition. However the defendant did not investigate plaintiffs records until June 1995. Without any attempt to investigate the claim or have Dr. Gengelbach review it within thirty days, the defendant denied coverage based on the alleged pre-existing condition. The failure to investigate the claim and the denial of coverage based on a groundless defense are clearly arbitrary and capricious acts of the defendant.
Accordingly, by judgment dated October 7, 1997, the trial court awarded plaintiff damages in the amount of $21,175.15 for expenses related to the September 1994 surgery and also awarded statutory penalties against Blue Cross in the amount of $21,175.15 for unreasonably denying plaintiffs claim without making an investigation. Finally, plaintiff was awarded attorney fees. The amount of the attorney fees was not fixed in the original *1088 judgment but was reserved for determination at a later Rule to Show cause hearing. After briefs were submitted, the court set the attorney fees award to plaintiff in the amount of $16,146.02 by judgment dated March 12, 1998.[2]
After the defendant's motion for new trial was denied, Blue Cross suspensively appealed the October 7, 1997 judgment. The issues presented by Blue Cross on appeal are whether the trial court correctly found that the plaintiffs claim was not excluded from coverage as a pre-existing condition and whether penalties and attorney fees should have been awarded.

THE PRE-EXISTING CONDITION EXCLUSION
We note at the outset that the courts impose a strict burden on the insurer to prove that an exclusionary clause is applicable and, in the case of a health policy, that the alleged pre-existing condition did in fact predate the effective date of the policy. Rabalais v. Louisiana Health Service and Indemnity Company, 95-545, p. 5 (La.App. 5th Cir.2/14/96); 671 So.2d 7, 9; Cheramie v. Board of Trustees, State Employees Group Benefit Program, 482 So.2d 742, 746 (La. App. 1st Cir.1985), writ denied, 486 So.2d 734 (La.1986). The evidence required to meet this burden must be certain and decisive, leaving no room for speculation or assumption. The insurer cannot meet its burden of proof by merely establishing that the illnesses were related. Rabalais, 95-545 at pp. 5-6; 671 So.2d at 9; Bonura v. United Bankers Life Insurance Company, 552 So.2d 1248, 1254 (La.App. 1st Cir.1989), writ denied, 558 So.2d 1125 (La.1990).
In the case before us, the trial court had to decide whether the adhesions removed in the September 21, 1994 surgery were pre-existing and constituted a pre-existing condition under the terms of the policy. Mrs. Savarino's policy states that "a condition is considered pre-existing if symptoms exhibit themselves; or any medical advice, diagnosis, care or treatment is received for that condition within 365 days immediately preceeding the member's original effective date."
As indicated in the trial court's written reasons for judgment, the court found that any adhesions that pre-existed the effective date of the contract had been removed during the November 1993 surgery. The court based this conclusion on the statement of the treating physician, Dr. Schultis, in which he noted that he removed all adhesions which were extant in 1993 during the November 1993 surgery. As the trial court properly recognized, Blue Cross presented no evidence to refute Dr. Shultis' report and physical findings.
Further, after reviewing the record, we find no merit in Blue Cross' claim that it should prevail because Dr. Schultis did not testify that he had removed all of the adhesions in the 1993 surgery, but merely stated that he had removed all the adhesions that he saw during the 1993 surgery. Neither the testimony nor other facts of this case support this distinction.
Dr. Gengelbach, Blue Cross' medical director and medical review physician, conceded that the only way to determine with any degree of certainty if pelvic adhesions are present is to look inside the patient's abdomen.
As the trial court noted, this is exactly what Dr. Schultis did in November 1993, when he then removed all of the existing adhesions. Dr. Schultis' notes from the 1993 operation indicate that he was able to remove the existing adhesions and that he examined Mrs. Savarino's abdominal-pelvis area with great care. Moreover, despite Blue Cross' characterization of Dr. Schultis' statements, the fact that Mrs. Savarino's pain from the adhesions was alleviated after the 1993 surgery, coupled with the fact that the adhesions removed in the 1994 surgery were affecting a *1089 different area of her abdomen, support the trial court's conclusion that the adhesions which were removed during the 1994 surgery were newly developed.
The general rule for appellate review of facts is whether the trial court was manifestly erroneous or clearly wrong. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Although the evidence in this matter consists solely of written reports, depositions and exhibits, we continue to apply the manifest error standard of review. Quinones v. Barber Brothers Contracting Company, 97-0655, p. 2 (La.App. 1st Cir.4/8/98); 710 So.2d 816, 818; Virgil v. American Guarantee and Liability Insurance Company, 507 So.2d 825, 826 (La.1987). Thus, we must give great weight to the trial court's findings where the evidence furnishes a reasonable factual basis for these findings. Quinones, 97-0655 at p. 2; 710 So.2d at 818. While the treating physician's testimony is not irrebuttable, the observations and opinions of a treating physician are to be accorded greater weight than those of a physician who did not serve in that capacity. Marie v. John Deere Insurance Company, 96-1288, p. 8 n.4 (La.App. 1st Cir.3/27/97); 691 So.2d 1327, 1333 n. 4; Riley v. Reliance Insurance Company, 97-0445, p. 16 (La.App. 4th Cir.11/19/97); 703 So.2d 158, 167, writ denied, 98-0283 (La.3/20/98); 715 So.2d 1220; Freeman v. Rew, 557 So.2d 748, 751 (La.App. 2nd Cir.1990).
After a thorough review of the entire record, we find that the trial court's factual conclusion that the adhesions treated in the September 1994 surgery were not present in November 1993, is amply supported by the record herein. Further. we agree with the trial court's conclusion that an insured's propensity to develop adhesions does not fall within the purview of the one-year pre-existing condition exclusion. We agree that the defendant failed to carry its burden of proving that the condition requiring surgery during the policy period was a pre-existing condition for which benefits were excluded. Accordingly, we find no error in the trial court's conclusion that Blue Cross was contractually bound under the terms of its policy, to cover the expenses associated with Mrs. Savarino's September 1994 surgery.

PENALTIES AND ATTORNEY FEES
Blue Cross argues that the trial court erred in assessing penalties and attorney fees against it as a result of its denial of benefits for Mrs. Savarino's 1994 surgery. Blue Cross contends that it had a just and reasonable ground to believe that the claim was excluded under the pre-existing condition clause.
Under LSA-R.S. 22:657, whenever a claim is properly presented under a health and accident policy, it must be paid within thirty days, unless just and reasonable grounds exist, such as would put a reasonable and prudent businessman on his guard that the claim is unjust. Tassin v. Golden Rule Insurance Company, 94-0362, p. 12 (La.App. 1st Cir.12/22/94); 649 So.2d 1050, 1056. The statute was evidently enacted to effect a speedy collection of just claims without diminution and without unnecessary delay and expense. Lopez v. Blue Cross of Louisiana, 397 So.2d 1343, 1345 (La.1981). The insurer is entitled to refuse or delay payment if such just and reasonable grounds for refusing or delaying exist. Rippon v. Variable Protection Administrators, Inc., 537 So.2d 262, 267 (La.App. 4th Cir.1988), writ denied, 541 So.2d 833 (La.1989). The issue of whether just and reasonable grounds exist is a question of fact to be decided based upon the facts and circumstances of each case, and the trial court's findings, for purposes of determining whether penalties should be imposed, should not be disturbed unless they are clearly wrong. Holland v. Golden Rule Insurance Company, 96-264, p. 6 (La.App. 3rd Cir.10/9/96); 688 So.2d 1186, 1189-1190; Tassin, 94-0362, p. 12; 649 So.2d at 1056-1057. The trial court found that Blue Cross' failure to investigate the claim until June, 1995, and the denial of coverage, prior to any investigation, was based upon a *1090 groundless defense. On this basis, the court found that Blue Cross had acted arbitrarily and capriciously. We find no error in this determination.
The evidence in this case shows that defendant denied the claim without any investigation. The claim for the September 21, 1994 surgery was initially rejected by defendant's internal computer system without review. In response to the initial rejection of the claim, Dr. Schultis sent a letter to defendant on October 31, 1994, explaining the nature of the surgery and offering information for review. Blue Cross did not review the claim at that time. It was only after plaintiff filed suit that Mrs. Savarino's September 21, 1994 claim ever was forwarded to Blue Cross' medical review department.
An insurer has an affirmative duty to verify, through a reasonable investigation, whether the claim was actually excluded from coverage. Rippon, 537 So.2d at 267; see Tassin, 94-0362 at p. 13; 649 So.2d at 1057. Although LSA-R.S. 22:657 impliedly authorizes an insurer to hold a claim in abeyance until its investigation is complete, see Rippon, 537 So.2d at 267; see also Daney v. Haynes, 630 So.2d 949, 954 (La.App. 4th Cir.1993), in this case, the defendant performed no investigation or review until eight months after the claim was initially submitted and two months after suit was filed. Thereafter, Blue Cross continued to deny the claim when it had sufficient information to show that benefits were due.
Additionally, as noted by the trial court, Blue Cross also attempted to justify its erroneous denial of the claim on the basis of a reproductive organ exclusion, despite having been notified by Dr. Schultis that plaintiff had no reproductive organs. Blue Cross later abandoned this defense to payment. As acknowledged by Dr. Gengelbach in his deposition, the reproductive organ exclusion could not serve as a defense to payment under the policy inasmuch as Mrs. Savarino had no reproductive organs, a fact which Blue Cross should have known, considering the medical records and information it had on file pertaining to this claimant.
We agree with the trial court that the total failure to timely or appropriately review this claim, and the continued denial of the claim on grounds which did not exist, even after receipt of a letter of explanation and straightforward clarification by the treating physician, establishes that defendant had no just and reasonable basis to deny the claim. Indeed, the case before us is remarkable for the utter absence of any review of the initial denial, even after Blue Cross received the treating physician's letter.
We find that the evidence supports the trial court's factual determination that defendant's cavalier denial of benefits without any meaningful review or any review whatsoever of the plaintiffs records after receiving an unsolicited letter of further explanation from the treating doctor, is unreasonable, arbitrary and capricious. When, as here, an insurer chooses to resist its contractual obligation based upon a supposed defense, which a reasonable investigation would have proved to be without merit, it acts at its peril and renders itself liable for statutory penalties. See Nickels v. Guarantee Trust Life Insurance Company, 563 So.2d 924, 928 (La.App. 1st Cir.1990) (citing Bonura, 552 So.2d at 1254). Considering the record herein, we accordingly find no error in the trial court's award of penalties and attorney fees under LSA-R.S. 22:657.

CONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of plaintiff is affirmed at defendant's cost.
AFFIRMED.
NOTES
[1] Adhesions are fibrous bands connecting internal structures that are normally separate. Adhesions can lead to a variety of complications, which include pelvic pain, infertility and bowel obstruction. Adhesions are common and can form on any surface in the pelvis and abdomen after surgery or in response to infection. The pain caused by adhesions varies from person to person, but if painful adhesions do form, the only treatment to give relief is surgery.
[2] We note although the Reasons for Judgment for the March 12, 1998 judgment appear in the record, the March 12, 1998 judgment is not contained therein. However, the parties do not dispute the terms of the judgment. Appellant does not contest the value of the attorney fees awarded in the subsequent judgment. Instead, Blue Cross contends that no attorney fees should have been awarded in the October 7, 1997 judgment on appeal herein.