| .NORRIS, Chief Judge.
Blue Cross appeals a trial court judgment finding that it was liable for medical expenses for the treatment of prostate cancer on Huey Savage. Blue Cross further challenges the assessment of attorney fees under ERISA. Savage answers the appeals requesting additional attorney fees for defending the appeal. We amend, and as amended, affirm.

Facts

Huey Savage lived in California and owned his own business through which he had insurance coverage with Med Life for himself and his wife. Savage decided to move to Louisiana to care for his parents and he sold the business to his brother. Savage started a business in Louisiana called Savage Systems, contacted a local broker and, in October 1995, purchased a group medical insurance policy from Blue Cross for the company. After Savage obtained coverage, he and his wife decided to undergo a complete physical examination. During the examination, Dr. Yarborough discovered that Savage had a high prostate specific antigen (PSA) level. Dr. Yar-borough referred Savage to Dr. Don Marx, a urologist, who recommended that *763 Savage undergo a biopsy. Based on the biopsy, done in December 1995, Savage was diagnosed with prostate cancer and successfully underwent external radiation treatments in the form of implantation of palladium “seeds.”
When the medical claims were submitted citing Savage’s medical records from California, Blue Cross denied coverage based on the pre-existing condition exclusion. Savage had regularly seen doctors in California for several medical conditions, including high blood pressure, an enlarged prostate, and frequent nighttime urination. Savage was taking Hytrin for his blood pressure; Hytrin had the secondary benefit of treating the nighttime urination. Several times Savage presented with high PSA levels in California.
12Blue Cross also alleged' that Savage made material misrepresentations on his application when he did not disclose the enlarged prostate or the associated problem of frequent nighttime urination. Savage filed suit against Blue Cross seeking coverage and payment of medical expenses incurred in connection with the prostate cancer treatment. Savage also requested attorney fees under ERISA for expenses incurred in pursuing the case in Louisiana. Additionally, University Community Hospital had filed suit against him in Florida for related medical expenses; he also requested attorney fees incurred in defending that suit.
After a trial on the merits, the district court found that Blue Cross had not attached the policy application to Savage’s policy; therefore the application was not admissible to prove a material misrepresentation. The.trial court also found no pre-existing condition and that Blue Cross was liable for the medical expenses. Lastly, the trial court found Blue Cross liable for attorney fees incurred in both the current suit and the suit in Florida pursuant to ERISA. Blue Cross appeals the trial court’s rulings as to coverage and attorney fees and Savage answers the appeal requesting additional attorney fees incurred at the appellate level.

Law and Analysis: Policy Application

In its assignment of error, Blue Cross challenges the trial court’s factual finding that the policy application was not attached to the policy when it was delivered to Savage. Additionally, Blue Cross argues that the trial court erred in finding that Savage did not make material misrepresentations in his application.
A trial court’s factual findings are accorded great weight and may not be disturbed by a reviewing court in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). Even though an appellate court may feel its own evaluations are more reasonable than the factfin-der’s, reasonable evaluations of credibility should not be disturbed where conflict exists in the testimony. Stobart v. State, 617 So.2d 880 (La.1993)
|3No application for health insurance shall be admissible in evidence in any action relative to the policy or contract, “unless a correct copy of the application was attached to or otherwise made part of the policy, or contract, when issued and delivered.” La. R.S. 22:618; Pugh v. Prudential Ins. Co. of America, 546 So.2d 335 (La.App. 3d Cir.1989); Smith v. North Am. Co. for Life., Acc. and Health Ins., 306 So.2d 751 (La.1975). When the application is not attached to or otherwise made part of the policy when issued and delivered, the insurer is barred from using any evidence to establish material misrepresentation on the application. Louisiana Health Services and Indem. Co. v. Brown Builders, Inc., 32,575 (La.App.2d Cir.12/8/99), 747 So.2d 708; Irving v. U.S. Fidelity & Guar. Co., 606 So.2d 1365 (La.App. 2d Cir.1992).
Rene Griffon, supervisor in the membership and billing department at Blue Cross, testified that according to the routing sheet, Savage’s company was mailed six schedule of benefits, four ID cards, one letter, and duplicate applica *764 tions. Griffon stated that the blank on the routing sheet was for “number of applications received,” and no blank for number of applications mailed. Griffon’s testimony was based solely on the routing sheets and general procedures as she was not working at the time Savage was mailed his policy.
Tammy Blanchard, employed by Blue Cross in the membership and billing department, was working when Savage’s policy was mailed; however, Blanchard had no memory of Savage’s mailing and her testimony was based on normal procedures. She testified that she keeps a calender recording what she processed, how many groups she processed, how many applications were processed, and how many copies were made. She stated that as for the Savage group, the calender shows that she made 14 copies, and it was her habit to copy the application. She testified that the next day, she sent the material to the mail clerk to get the booklet ready. She further testified that according to standard procedure, policy holders Rwould receive a booklet with the schedule of benefits taped to the front and the application stapled to the back of the booklet. She also stated that extra booklets were sent, but the schedule of benefits would not be in them.
Deborah Hull, the mail clerk during the time Savage’s booklet was sent to him, also testified to general procedure as she had no specific memory of mailing Savage his information. She testified that the booklet would contain an ID card, the schedule of benefits would be taped to the front, and the application and any endorsements would be stapled to the back. She testified that she would get the information with the routing sheet, then initial the sheet and date it; however, she would not enter the number of things sent; someone else filled in that block.
Savage testified that he searched his records where he filed all his insurance information and could find no application. He further testified that he never received a copy of his application. Noel Haynes, the officer manager for Savage Systems, Inc., testified that she was the primary contact between Savage Systems and Blue Cross. She stated that she initially got the booklets and handed them out. She further stated that she filed all letters and information she received. Haynes testified that neither Savage’s nor her own application were attached to the policy.
Savage also introduced a booklet which had the schedule of benefits shoved into it and an endorsement stapled to the back. There was no application in the booklet. Blanchard acknowledged that the booklet did not have an application, although she believed it to be a sample. Blanchard did state that sample booklets do not contain a schedule of benefits. Hull testified that a sample booklet would have “sample booklet” across the top and the booklet Savage introduced did not. She stated that the booklet was not put together well and acknowledged that it did not contain an application.
The trial court found the application was not attached to the policy. The- trial court stated that Blue Cross’s employees testified only as to standard |Kprocedure while Savage and Haynes testified that the application was not attached. The trial court found Savage’s and Haynes’s testimony more credible, a reasonable decision based on the record. We find that the trial court was not manifestly erroneous in determining that Savage’s application was not attached to his policy, therefore the application was not admissible. This assignment of error lacks merit.
Since the trial court did not err in its determination that the application was not attached to the policy, Blue Cross is barred from presenting any evidence of material misrepresentations contained therein. As such, this assignment of error has no merit.

Pre-existing Condition

The burden of proving that an alleged pre-existing condition predated the effective date of the policy is on the insur *765 er. Rabalais v. Louisiana Health Service and Indem. Co., 95-545 (La.App. 5th Cir.2/14/96), 671 So.2d 7; Savarino v. Blue Cross and Blue Shield of Louisiana Inc., 98-0635 (La.App. 1st Cir.4/1/99), 730 So.2d 1083. The evidence required to meet this burden must be certain and decisive, leaving no room for speculation or assumption. Id. The insurer cannot meet its burden of proof by merely establishing that the illnesses were related. In order to avoid liability, the insurer is required to prove that the claimant was treated for the same condition in both instances. Id. On review, the appellate court should not disturb factual findings in the absence of manifest error or unless clearly wrong. Stobart v. State, supra. This standard applies to the trial court’s finding with respect to a preexisting condition clause. Cramer v. Association Life Ins. Co., Inc., 619 So.2d 821 (La.App. 1st Cir.1993), cert denied 499 U.S. 938, 111 S.Ct. 1391, 113 L.Ed.2d 447 (1991); Hebert v. Louisiana Health Service Indem. Co., 626 So.2d 96 (La.App. 3d Cir.1993), writ denied 93-2994 (La.2/25/94), 632 So.2d 762.
Blue Cross introduced Savage’s medical records to show that he had several instances of high PSA levels prior to the effective date of the Blue Cross policy. IfiDr. James G. Gengelbach, Blue Cross’s Vice President for Managed Care Programs and Medical Director of the Plan, was accepted as an expert reviewer of the quality of care provided by other physicians and testified that a high PSA level typically indicates or is highly suspicious for prostate cancer. He stated that generally, when a patient presents with high PSA levels, Louisiana physicians would suggest a trans-rectal ultrasound and possible biopsy to check for prostate cancer. Dr. Gengelbach stated that he reviewed Savage’s claim for the biopsy only and recommended denying it as a pre-existing condition in light of Savage’s history of elevated PSA levels.
Dr. Gengelbach admitted that he never reviewed or denied Savage’s claim for the treatment of prostate cancer. He testified that an enlarged prostate and prostate cancer are two different conditions. Additionally, he admitted that an elevated PSA level was not a condition, but was a diagnostic test which can be indicative of several conditions, including prostate cancer, enlarged prostate or prostatitis. Dr. Gen-gelbach also acknowledged that Savage had not previously undergone a biopsy, but had only been treated for an enlarged prostate.
Savage’s medical records reveal that Dr. Marx had noted prior elevated PSA levels, but that no one had previously recommended that Savage undergo a biopsy. Dr. Mark Sullivan, who last treated Savage in California in 1992, wrote a letter which was submitted to Blue Cross, indicating that on his last visit, Savage’s PSA levels were normal and there was no sign or suggestion of prostate cancer. He specifically stated that the prostate cancer should not be a pre-existing condition.
Based on the record, Blue Cross merely showed that Savage had previously been diagnosed with and treated for an enlarged prostate, frequent nighttime urination, and had undergone blood tests which revealed elevated PSA levels. Though Dr. Gengelbach testified that these conditions might indicate prostate 17cancer, he also acknowledged that there was no prior diagnosis of or claim for treatment of such. Additionally, Leanne Garrett, an underwriter with Blue Cross, testified that according to Blue Cross guidelines, an enlarged prostate and prostate cancer are two separate conditions. In sum, the trial court was not manifestly erroneous in finding that Blue Cross showed that Savage previously suffered from enlarged prostate but failed to prove that he had ever been diagnosed with or treated for prostate cancer. Rabalais v. Louisiana Health Service and Indem. Co., supra; Savarino v. Blue Cross and Blue Shield of Louisiana Inc., supra. As such, this assignment of error lacks merit.

*766
Attorney Fees

Blue Cross challenges the trial court’s grant of attorney fees for the prosecution of the present case and the defense of a case brought against Savage by University Community Hospital in Florida. Both parties concede that ERISA applies in the determination of whether attorney fees are proper.
In determining whether attorney fees are proper under ERISA, the trial court considers the following factors: “(1) the degree of the opposing parties’ culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys’ fees; (3) whether an award of attorneys’ fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys’ fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties’ position.” 29 U.S.C. § 1132(g)(1); Todd v. AIG Life Ins. Co., 47 F.3d 1448 (5th Cir.1995); Life Partners, Inc. v. Life Ins. Co. of North Amer., 203 F.3d 324 (5th Cir.1999). The determination to award reasonable attorney fees and costs is discretionary with the trial court. Id. Therefore, our review of the trial court’s determination is based on an abuse of that discretion. Id.
lain brief, Blue Cross concedes that the second and third factors support the award. Blue Cross acknowledges that it is in a position of being able to satisfy the award and that an award tends to deter misconduct. The trial court found, and Savage does not dispute, that the fourth factor mitigates against an award; this suit was not intended to benefit all participants in a plan or to resolve a significant legal question, but merely to obtain reimbursement for medical expenses.
Blue Cross argues that its conduct was not in bad faith. It initially consulted Dr. Gengelbach, who suggested denying the claim for the biopsy in light of Savage’s prior high PSA levels and other symptoms. As noted, however, Savage’s prior condition was diagnosed as an enlarged prostate. Additionally, no doctor had ever previously recommended a biopsy, and Dr. Sullivan’s letter specifically refuted that Savage’s prostate cancer was pre-existing. In spite of this contrary evidence, Blue Cross also denied the subsequent claims for treatment of prostate cancer and obviously did not even submit the latter claims to its own expert and Medical Director. The failure to re-examine its initial denial, after receiving evidence that clearly contradicted its assumptions, cannot be considered good faith.
Blue Cross also argues that the final factor, the merits of the defense, weighs against an award of attorney fees. Of course this court has already considered and rejected the defense that prostate cancer was a pre-existing condition. Moreover, while Blue Cross’s alleged defense of misrepresentation was rejected because the application was not attached to the policy as required by R.S. 22:618; the defense was unavailable because of Blue Cross’s conduct, making its position relatively weaker than Savage’s.
In sum, four out of the five factors support the award of attorney fees and as such we find that the trial court did not abuse its discretion in awarding Savage attorney fees for prosecuting the suit in Louisiana.
| flBlue Cross also argues that the issue of the Florida suit does not arise under the ERISA claim and as such, Savage is not entitled to attorney fees for defending that suit. ERISA only provides for contractual damages, not for “extra-contractual” damages. Farr v. U.S. West Communications, Inc., 151 F.3d 908 (9th Cir.1998), amended for other reasons, 179 F.3d 1252 (9th Cir.1999), cert denied, 528 U.S. 1116, 120 S.Ct. 935, 145 L.Ed.2d 814 (2000); U.S. Steel Mining Co., Inc. v. District 17, United Mine Workers of Amer., *767 897 F.2d 149 (4th Cir.1990). Savage can only obtain attorney fees incurred in an ERISA claim. The claim out of Florida did not arise under ERISA and is thus extra-contractual. As such, the trial court abused its discretion in awarding Savage those expenses.
Savage answered the appeal asking for additional attorney fees. We find, as did the trial court, that based on the evidence before us, the ERISA factors support the conclusion that Savage is entitled to attorney fees for defending this appeal. As such, we award Savage an additional $1,000.

Conclusion

We affirm the trial court’s ruling that Savage’s application was not attached to his policy and as such was inadmissible and any material misrepresentation claims must therefore fail. Additionally, we affirm the trial court’s finding that the prostate cancer was not a pre-existing condition. We amend the trial court’s grant of attorney fees, deleting that portion of the award for $731.83 for the defense of the Florida suit, but in all other aspects affirm the $17,598.39 award of attorney fees. Additionally, we further amend the judgment and award Savage $1,000 for attorney fees incurred in answering the appeal. Appellate costs are assessed to Blue Cross.
AMENDED AND AS AMENDED, AFFIRMED.