STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 07-1347


KEITH SINGLETARY, ET AL.

VERSUS

STATE FARM FIRE & CASUALTY CO., ET AL.


**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 55,040
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Glenn B. Gremillion, Judges.

**REVERSED IN PART AND AFFIRMED IN PART.**


William Preston Crews, Jr.
Attorney at Law
P. O. Box 226
Natchitoches, LA 71458-0226
(318) 356-8001
Counsel for Defendant/Appellant:
Conagra Poultry Company

Craig Alan Davis
Attorney at Law
111 Mercury
Lafayette, LA 70503
(337) 231-5351
Counsel for Plaintiffs/Appellees:
Keith Singletary
Belinda Singletary

**SAUNDERS, Judge.**

**FACTS AND PROCEDURAL HISTORY:**

On May 4, 2001, then fifteen-year-old Mary Peterson (hereinafter "Ms. Peterson") was involved in an automobile accident from which she sustained severe bodily injury. Ms. Peterson was transported by MedExpress ambulance to Natchitoches Parish Hospital, and then flown by Life Air Rescue helicopter to LSU Health Sciences Center in Shreveport (hereinafter "LSUS"), where she remained in intensive care for over a month. Due to the severity of Ms. Peterson's injuries, the medical bills she incurred totaled nearly $250,000.00.

At the time of the accident, Ms. Peterson's father, Mr. Keith Singletary (hereinafter "Mr. Singletary"), was employed by defendant ConAgra Poultry Company (later acquired by Pilgrims Pride Corporation, both hereinafter referred to as "ConAgra"). As part of its employee benefits package, ConAgra provided health insurance coverage in the form of the ConAgra Employee Benefit Plan (hereinafter "Benefit Plan"), which was administered by Blue Cross Blue Shield of Nebraska (hereinafter "BCBSN"). Stemming in part from ConAgra's alleged failure to timely repay medical bills under the Benefit Plan, Mr. Singletary and his wife, Ms. Belinda Singletary (hereinafter collectively "plaintiffs") brought suit on May 3, 2002, in the Eleventh Judicial District Court, in Sabine Parish, Louisiana. Plaintiffs sought payment of bills as well as attorney's fees.

After years of litigation, plaintiffs and ConAgra finally participated in a one-day bench trial before Judge Stephen Beasley (hereinafter "Judge Beasley") in July 2007, with the only issue being the plaintiffs' claim against ConAgra for payment of medical bills. At trial, Mr. Singletary testified that although the majority of the $59,112.76 in medical bills owed to LSUS were incurred during the months of May

and June 2001, they were not paid under the Benefit Plan until March 2003. Plaintiffs argued that they were thus entitled to statutory penalties and attorney's fees under La.R.S. 22:657(A), the enforcement provision of the Louisiana Insurance Code. As an affirmative defense, ConAgra argued that La.R.S. 22:657(A) was preempted by the federal Employee Retirement Income Security Act of 1964 (hereinafter "ERISA"). 29 U.S.C. § 1001, *et seq*.

**ASSIGNMENTS OF ERROR:**

1) Did the trial court commit manifest error in finding that ConAgra did not meet its burden of proof in establishing its affirmative defense that the Benefit Plan was an "ERISA plan?"

2) Did the trial court commit manifest error in employing considerations of whether or not the Benefit Plan was funded or unfunded to determine that the Benefit Plan was not an "ERISA plan?"

3) Did the trial court commit manifest error in awarding plaintiffs statutory penalties and attorney's fees under La.R.S. 22:657?

4) Did the trial court commit manifest error in concluding that certain medical bills at issue here had not been timely processed and paid?

**ASSIGNMENT OF ERROR #1:**

In its first assignment of error, ConAgra argues that the trial court erred in finding that it failed to meet its burden of proof in establishing the affirmative defense that the Benefit Plan was an "ERISA plan." More particularly, ConAgra asserts that the inclusion of its "Poultry Company Medical Plan PM23F" (hereinafter "Plan Booklet") in the record precluded the trial court from reasonably concluding that the Benefit Plan was not an "ERISA plan," thus preempting the applicability of La.R.S.

2

22:657(A). We agree.

The United States District Court for the Western District of Louisiana previously discussed the preemptive effect of ERISA on state laws in *Rasmussen v. Metropolitan Life Insurance Co.*, 675 F.Supp. 1497 (W.D. La. 1987). There, the court proclaimed:

> The ERISA preemption clause provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in § 1003(a) of this title and not exempt under §1003(b) of this title." 29 U.S.C. § 1144(a). Thus if the employee benefits do not constitute a "plan" within the meaning of ERISA, the preemption inquiry ends. Likewise, if the state law does not "relate to" an ERISA plan, preemption will not occur. The definition of an ERISA plan is codified in § 1002(1), and was summarized in *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982), as follows:
>
>> [A] 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits. To be an employee welfare benefit plan, the intended benefits must be health, . . . the intended beneficiaries must include union members, employees, former employees, or their beneficiaries; and an employer or employee organization, or both, and not individual employees or entrepreneural [sic] businesses, must establish or maintain the plan, fund, or program.

*Id.* at 1500 (footnote omitted). Thus, in order for employee benefits to qualify under ERISA, they must first satisfy the requirements for an "ERISA plan" under *Donovan*.

ConAgra argues that its Benefit Plan satisfies these requirements. We agree. As evidenced by the Plan Booklet—entered into the record as plaintiffs' "Exhibit 3"—the Benefit Plan was established by ConAgra for the intended purpose of providing health benefits to employees and their eligible dependents. With respect to the Benefit Plan's source of financing, the Plan Booklet clearly states: "The plan is funded by ConAgra Poultry Company and participating employees through a trust agreement with: State Street Bank and Trust Company." Moreover, the Plan Booklet

3

outlines clearly the procedures for receiving benefits, under the section bearing the heading "How to File a Claim." In sum, the Benefit Plan satisfies all prerequisites for qualifying as an "ERISA plan" under *Donovan*.

In addition to meeting the substantive requirements for an "ERISA plan," we note further that the Plan Booklet contains a section entitled "Your ERISA Rights." That section begins: "The ConAgra Poultry Company Medical Plan provides rights and protections to employees under the Employee Retirement Income Security Act of 1974 (ERISA)." The section goes on to provide a mechanism for employees' free review of "all plan documents," a mailing address from which copies of "all plan documents and other information" can be ordered for a nominal per-page fee, and an assurance that a summary of the annual financial report will be provided to employees. Finally, that section reviews generally the rights and duties imposed by ERISA upon employees and fiduciaries, respectively, and outlines the proper steps employees should take to enforce their ERISA rights. Thus, given the veritable cornucopia of indicia contained within the record, we find that the Benefit Plan is, indeed, an "ERISA plan."

Whatever the substantive merits of the Benefit Plan, plaintiffs argue that the trial court's ruling finding no ERISA coverage was justified in that ConAgra failed to meet its burden in establishing the affirmative defense of ERISA preemption. Specifically, plaintiffs argue that the evidence presented by ConAgra was insufficient on two counts: 1) because ConAgra's sole witness regarding the policies and procedures of the Benefit Plan, Ms. Yolanda Belman (hereinafter "Ms. Belman") was unable to answer basic questions about the Benefit Plan, and 2) because the Plan Booklet offered into evidence was not a document comprising ConAgra's actual

4

Benefit Plan, but merely a "broad stroke description of the benefits offered and covered." Plaintiffs contend that such evidentiary insufficiencies preclude this court from now holding that the record compels the classification of the Benefit Plan as an "ERISA plan."

The trial court's conclusion that ConAgra failed to meet its burden of proof in establishing that the Benefit Plan is an "ERISA plan" is a finding of fact. The applicable standard of review for a finding of fact in the ERISA context was outlined by the first circuit in *Frost v. Metropolitan Life Insurance Co.*, 93-753 (La.App. 1 Cir. 4/8/94), 635 So.2d 706, *writ denied*, 94-1176 (La. 6/24/94), 640 So.2d 1353. There, the first circuit stated:

> When reviewing a trial court's factual findings in a case based on . . . ERISA, an appellate court accepts the trial court's findings unless they are clearly erroneous or influenced by an incorrect view of the law. *Olitsky v. Spencer Gifts, Inc.* 964 F.2d 1471, 1479 (5th Cir.1992), cert. denied, [507] U.S. [909], 113 S.Ct. 1253, 122 L.Ed.2d 652 (1993). This standard of review for factual findings is akin to the manifest error-clearly wrong standard employed by appellate courts under Louisiana law. *Stobart v. State, Department of Transportation and Development*, 617 So.2d 880, 882 (La.1993). The issue to be resolved by a reviewing court is not whether the trial court was right or wrong, but whether its conclusion was a reasonable one.

*Id.* at 711-12. Thus, if in light of the inconsistencies outlined above the trial court still was not reasonable in concluding that the Benefit Plan was not an "ERISA plan," we must reverse the holding of the trial court with respect to the Benefit Plan's ERISA status.

Plaintiffs argue that the trial court's conclusion that the Benefit Plan was not an "ERISA plan" is reasonable in light of the record evidence, and thus was not clearly erroneous. We disagree. Plaintiffs point out that the Plan Booklet merely constituted a "broad stroke description" of the ConAgra Benefit Plan, as evidenced

5

by language in the Plan Booklet which reads: "This booklet describes the ConAgra Poultry Company Medical Plan. This booklet is not intended to be a legal document. If the terms and conditions described in this booklet and the provisions of the plan document do not agree, the plan document will govern." Even accepting the argument that the Plan Booklet was not a fully-integrated declaration of the substance of the Benefit Plan, however, the Plan Booklet's "broad stroke description" of the Benefit Plan easily satisfies the broad categorizations employed by *Donovan*, 688 F.2d 1367, in outlining the requirements for an "ERISA plan." Indeed, in using twenty-eight pages—excluding the table of contents and title page—to outline the substance of the Benefit Plan, the Plan Booklet actually goes into far more detail than *Donovan* requires, as evidenced by its inclusion of sections regarding the interplay of the Benefit Plan and Medicare, a category-by-category breakdown of areas that are covered and not covered by the plan, and a glossary of terms, among other things. In light of the heightened degrees of detail and specificity engendered by the Plan Booklet, the fact that there may elsewhere exist an even more detailed description of the Benefit Plan cannot sustain as a reasonable conclusion the proposition that the Benefit Plan described by the Plan Booklet is not an "ERISA plan."

Moreover, the inability of Ms. Belman to answer certain basic questions about the Benefit Plan is similarly insufficient to make reasonable the conclusion that the Benefit Plan was not an "ERISA plan." As discussed above, the Plan Booklet alone contains more than enough evidence of the Benefit Plan's substance to compel the conclusion that the Benefit Plan is an "ERISA plan." Ms. Belman's deficiency as a witness is simply not enough to justify a contrary conclusion, particularly in light of the fact that the Plan Booklet, itself—which, we note here, was introduced into

6

evidence by plaintiffs—more than suffices in meeting the threshold requirements for qualification as an "ERISA plan." Thus, because we find that the trial court was unreasonable and clearly wrong in concluding that the record did not sufficiently establish that the Benefit Plan is an "ERISA plan," we reverse that aspect of its decision and now hold that the Benefit Plan is an "ERISA plan."

Having found that ConAgra's Benefit Plan is, in fact, an "ERISA plan," *Rasmussen*, 675 F.Supp. 1457, dictates that we must next determine whether the state law at issue in this case, La.R.S. 22:657(A), conflicts with ERISA. This court previously discussed the relationship between ERISA and La.R.S. 22:657(A) in *Smith v. Guardian Life Insurance Co.*, 546 So.2d 320 (La.App. 3 Cir. 1989). There, we reasoned:

> In *Pilot Life* [*Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549 (1987)], the United States Supreme Court made it crystal clear that the civil enforcement provisions of ERISA as contained in [ERISA] § 502(a)[, 29 U.S.C. § 1132(a)] were the *exclusive* vehicle for actions by ERISA participants and beneficiaries; and that various state causes of action which fall within the scope of and/or conflict with § 502(a) are pre-empted [sic]. We find La.R.S. 22:657(A) provides a remedy both within the scope of and in conflict with § 502(a) *and thus is pre-empted* [sic] *by ERISA*.

*Id.* at 322 (second emphasis added).

Thus, as we have already concluded in *Smith*, La.R.S. 22:657(A) is preempted by ERISA. As such, we find this assignment of error to be wholly meritorious. As outlined above, we hold that ConAgra's Benefit Plan is an "ERISA plan," and that the applicability of La.R.S. 22:657(A) to the case at bar is thus preempted by ERISA.

**ASSIGNMENT OF ERROR #2:**

In its second assignment of error, ConAgra argues that the trial court committed manifest error in employing considerations of whether or not the Benefit

7

Plan was funded or unfunded to determine that the Benefit Plan was not an "ERISA plan." Because we have already found that the Benefit Plan is an "ERISA plan" under *Donovan*, 688 F.2d 1367, we find this assignment of error to be moot.

**ASSIGNMENT OF ERROR #3:**

In its next assignment of error, ConAgra argues that the trial court was manifestly erroneous in awarding statutory penalties and attorney's fees under La.R.S. 22:657. We agree in part, and disagree in part.

As discussed above, the classification of the Benefit Plan as an "ERISA plan" dictates that La.R.S. 22:657 is preempted by ERISA in the case at bar. As such, the trial court's award of damages is governed by ERISA's civil enforcement provision, 29 U.S.C. § 1132, rather than by La.R.S. 22:657(A).

The exclusive applicability of ERISA is quite significant in the context of statutory relief, for La.R.S. 22:657 affords broader relief than does 29 U.S.C. 1132. In pertinent part, La.R.S. 22:657(A) reads:

> All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist . . . *Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court.*

By contrast, 29 U.S.C. § 1132 contains no such provision for statutory penalties amounting to double the benefits due under the policy. Instead, 29 U.S.C. § 1132's statutory penalties are limited to attorney's fees and litigation costs: "In any action under this subchapter (other than an action described in paragraph (2)) by a

8

participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Thus, with respect to the $118,000.00 damage amount awarded by the trial court—which represents the amount of benefits due under the Benefit Plan, doubled pursuant to La.R.S. 22:657(A)—we hold that the applicability of ERISA compels us to nullify that award.

ConAgra further argues that the trial court's award of $39,333.33 in attorney's fees was also improper. We agree in part, and disagree in part.

"The determination to award reasonable attorney fees and costs is discretionary with the trial court." *Savage v. La. Health Serv. & Indem. Co.*, 33,853, p. 7 (La.App. 2 Cir. 9/27/00), 768 So.2d 760, 766. "We review the district court's decision to award attorneys' fees for an abuse of discretion." *Life Partners, Inc. v. Life Ins. Co. of N. Am.*, 203 F.3d 324, 325-26 (5th Cir. 1999).

> In determining whether attorney fees are proper under ERISA, the trial court considers the following factors: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' position."

*Savage*, 768 So.2d at 766 (citing 29 U.S.C. § 1132(g)(1)); *see also Talley v. Enserch Corp.*, 589 So.2d 615 (La.App. 3 Cir. 1991), *writ denied*, 592 So.2d 1342 (La.1992). Thus, unless the trial court abused its discretion—in light of the five *Savage* factors—by awarding attorney's fees to plaintiffs, the trial court's decision to award attorney's fees must stand.

Here, it appears that factors (2) and (3) weigh in favor of awarding attorney's

9

fees. There is nothing in the record to indicate that ConAgra (now Pilgrim's Pride) has insufficient funds to support a five-figure award of attorney's fees, and it stands to reason that an award of attorney's fees in the instant case would tend to deter similar conduct in the future. It seems equally clear that factor (4) weighs against awarding attorney's fees: plaintiffs' suit does not seem to be motivated by the desire to secure a benefit for all participants and beneficiaries of the Benefit Plan, nor to resolve a significant legal question regarding ERISA.

With respect to factors (1) and (5), however, it is evident that the trial court found these factors to weigh heavily in favor of awarding attorney's fees. The record reflects that, as administrator of the Benefit Policy, BCBSN's stated reasons for twice denying plaintiffs' claim for repayment of medical bills were problems stemming from the treating hospital's 23-line submission of relevant data, which exceeded the 21 lines allowed by BCBSN's electronic submission protocol. In his Written Reasons for Judgment, Judge Beasley condemns such justifications as "feebly weak in merit," "arbitrary and capricious," and "unjust and unreasonable." Within this context, it seems clear that the trial court felt that the relative merits of the parties' positions skewed in favor of plaintiffs. Further, although we are hesitant to place words in the mouth of the trial court regarding its estimation of ConAgra and BCBSN's good or bad faith, it is evident that the trial court found them to be—at the very least—highly culpable in causing the nearly two-year-long delay in payment of plaintiffs' medical bills covered under the policy. Giving all of these factors their due consideration, and especially in light of the discretion afforded by law to the trial court, we find that the trial court did not exceed its authority in deeming plaintiffs deserving of reasonable attorney's fees in the case at bar.

Having found the trial court's imposition of attorney's fees to be appropriate, we must now determine the reasonableness of the attorney's fees awarded. "A trial court is vested with considerable discretion when setting attorney fees." *Woodall v. Weaver*, 43,050, pp. 4-5 (La.App. 2 Cir. 2/13/08), 975 So.2d 750, 753. "While a court's attorney fee award should not be modified on appeal absent a showing of an abuse of discretion, it is not without parameters dependent on the 'reasonableness' of a particular sum." *Short v. Plantation Mgmt. Corp.*, 99-899, p. 1 (La.App. 1 Cir. 12/27/00), 781 So.2d 46, 65. The supreme court addressed the issue of "reasonableness" in *State, Department of Transportation & Development v. Williamson*, 597 So.2d 439, 442 (La.1992)(footnote omitted):

> Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.

*See also Smith v. State, Dep't Transp. & Dev.*, 04-1317, 04-1594, (La. 3/11/04), 899 So.2d 516. However, as the trial court generally enjoys the benefit of presiding over the matter, its inherent familiarity with the work of the attorneys, the complexity of the issues, the effort put forth, and the time invested additionally justify the significant deference afforded to the amount of attorney's fees awarded. *Short*, 781 So.2d 46. As such, in determining whether the $39,333.33 awarded by the trial court is reasonable, we must apply these factors to the instant case.

Here, the result ultimately obtained by plaintiffs' counsel was a favorable disposition of the case after a bench trial. The record indicates that the litigation was extremely important to plaintiffs, as it involved a severe injury to their minor child and

11

their subsequent prolonged harassment by creditors seeking payment of medical bills. Further the amount of money involved in the instant matter—nearly $250,000.00—was substantial.

The extent of work performed by plaintiffs' attorney was also substantial, in light of the nearly five years that have elapsed from the date of the initial complaint and the many appearances necessitated during that time. Indeed, the nature of the case at bar compelled plaintiffs' attorney to deal with complex litigation involving multiple claims, multiple parties, motions for summary judgment, motions to dismiss, and a trial on the merits before ultimately progressing to the suspensive appeal currently before us. Moreover, the record indicates that the legal knowledge, diligence, and skill exhibited by counsel was significant. Finally, in light of the trial court's familiarity with the work of the attorneys, the complexity of the issues, the effort put forth, and the time invested, we find ourselves compelled to afford great deference to the court's exercise of its firsthand experience in setting the amount of attorney's fees. Taking all of these factors into consideration, we do not find the $39,333.33 award of attorney's fees to be unreasonable under the given circumstances, and thus we affirm the trial court's award of that amount.

We note further that although the trial court arrived at the attorney's fees amount by taking one third of the penalties owed under the statutory doubling provision of La.R.S. 22:657, the inapplicability of that statute to the instant matter does not render the trial court's attorney's fees award unreasonable. On the contrary, as discussed above, whether or not the amount of attorney's fees awarded is able to withstand judicial scrutiny in light of the *Williamson* factors serves as the test of "reasonableness." Thus, notwithstanding the method by which the trial court arrived

at the sum of $39,333.33, its reasonableness under *Williamson*, 597 So.2d 439, compels this court to accept that amount as the result of a proper exercise of the trial court's vast discretion.

**ASSIGNMENT OF ERROR #4:**

In its final assignment of error, ConAgra argues that the trial court committed manifest error in concluding that certain medical bills had not been timely processed and paid. Because the issue of timely payment in the instant case would be material as to liability only if La.R.S. 22:657 had not been preempted by 29 U.S.C. § 1132, this assignment of error is moot.

**CONCLUSION:**

For the reasons discussed above, with respect to the ruling of the trial court, we reverse in part and affirm in part. We reverse, in that we hold ConAgra's Benefit Plan to be an "ERISA plan," and the applicability of La.R.S. 22:657(A) to the case at bar to thus be preempted by ERISA. We affirm, in that we hold the trial court's imposition of attorney's fees in the instant case to be appropriate, and the $39,333,33 amount to be reasonable under the circumstances. Costs are to be shared by the parties equally.

**REVERSED IN PART AND AFFIRMED IN PART.**